**Marie E. HAYES, Plaintiff–Respondent,**

v.

**Jesse Willard HAYES, Defendant–Appellant.**

**No. 16261.**

Missouri Court of Appeals, Southern District, Division Two.

July 6, 1990.

Ronald D. White, Williams, Robinson, Turley, Crump & White, Rolla, Joseph W. Rigler, Salem, for defendant-appellant.

No respondent's brief filed.

SHRUM, Judge.

Jesse Willard Hayes, husband, appeals from the decree of dissolution of marriage from wife, Marie E. Hayes. Husband's single point is that the trial court erred and abused its discretion in making an inequitable division of property. The trial court order awarded husband 26 percent of marital property ($22,000.00) and awarded wife 74 percent of marital property ($62,810.00); property of a value of $11,600.00, determined by the court to be "separate property," was awarded to wife, leaving a final division of property at 23 percent to husband and 77 percent to wife. The decree divided the property as follows:

| Item | Husband | Wife |
|------|---------|------|
| Real Property | | $65,000.00 |
| 1978 Ford LTD | | $ 1,700.00 |
| Deep Freeze | | $ 1,000.00 |
| Savings Account | | $ 5,110.00 |
| 1985 Chevrolet Pickup | $ 6,500.00 | |
| Camper/Trailer | $ 5,500.00 | |
| Total Gross Marital Property | $12,000.00 | $72,810.00 |
| Percentage | 14% | 86% |
| Money Judgment on Realty | $10,000.00 | <$10,000.00> |
| Total Net Marital Property | $22,000.00 | $62,810.00 |
| Percentage | 26% | 74% |
| Separate Property | $ 0.00 | $11,600.00 |
| Total Net Property | $22,000.00 | $74,410.00 |
| Percentage | 23% | 77% |

This court affirms.

Husband and wife were married May 16, 1975. Each was 73 years old at time of trial. They separated April 27, 1988. No children were born of their marriage. Wife had four children by a prior marriage. Wife had an eighth grade education but was licensed as a practical nurse. Wife had not worked as an L.P.N. during the marriage. Wife's social security income was $420.00 per month; husband's social security income was $276.00 per month. At the time of trial, wife's health was poor. She had multiple sclerosis, arteriosclerotic heart disease, kidney problems, peptic ulcer and diabetes. She was under a doctor's care and estimated the cost of her monthly medical care to be $120.00 plus $80.00 per month for medicine.

When married, husband had no real estate but had a 1969 automobile, 1966 pickup truck worth over $1000.00, and a camper trailer for which he had paid $550.00. Husband had some cash when married, but he did not know how much, and described it as "no big deal." At the time of the marriage, wife had a small parcel of real estate in Ohio, which was sold after the marriage for $5,000.00. The real estate sale proceeds were used to buy an automobile ($3,000.00) titled in both names, with the balance ($2,000.00) used for the parties' living expenses. When married, wife had $8,000.00 in a bank account, which was proceeds from fire insurance recovery on a mobile home. The wife claimed the $8,000.00 was contributed and spent during the marriage on marital real estate, for

living expenses for husband and wife, and to pay farm operation expenses. When the parties married, the wife had the following additional property: (a) Land contract bearing 6 percent interest, which had a principal balance of approximately $22,000.00 and which provided $150.00 monthly payments; (b) Obligation of $25,000.00 (not represented by any note or other written record) owed by wife's son Dr. Doyle Hill to wife; and (c) 1971 Ford automobile and household furnishings. The wife claimed that during the marriage she received payments of approximately $23,850.00 on the land contract all of which was devoted to buying groceries, "[t]hat's what our living came out of." At trial, the balance remaining on the land contract was approximately $6,000.00 and this was a part of the "separate property" set over to the wife by the trial court's order. The wife and her son, Dr. Doyle Hill, testified that the $25,000.00 had been paid to wife after her marriage, and the wife contended the $25,000.00 "went into the place, remodeling and redoing."

Immediately following their marriage, the parties lived in Michigan for 2 years. During the 2-year Michigan stay, husband worked for wife's son. The husband was paid $125.00 per week for his work. While in Michigan, they lived in the wife's son's house rent free and without having to pay utilities. The wife bought the groceries and husband was able to save his money while in Michigan.

Approximately 2 years after the marriage, the parties returned to Texas County and bought an old house and 9 acres for $15,000.00. The real estate was titled in husband's and wife's names. They each contributed $5,000.00, with his money being money he had saved while in Michigan. At the time of the purchase of the real estate, the parties borrowed $15,000.00, with $5000.00 of the loan being to complete the purchase and the balance of $10,000.00 used for making improvements on the house. After their return to Texas County, the parties completely rebuilt the old house, including removal of the top, new rafters, new roof, all new work inside, paneling, papering, new floors, new wiring, new water system, drilled well and double garage. The money for this came from what the wife had and what little the husband had.

On the farm itself, new fencing was installed, pasture was seeded, a barn was built, water was put in the barn with heaters, a chicken house was built with water piped to it, and a large shed was built to house a 33-foot travel trailer which was purchased during the marriage. In addition to those expenditures, the parties bought two new four-wheel drive pickup trucks during the marriage and two late model automobiles. The monies available to pay for the above (other than the contributions of money claimed by the wife from her pre-marital assets) consisted of the parties' social security income; $250.00 per month paid by the wife's son to the husband in return for his looking after cattle for the son; and the husband's cattle farming income. After returning to Texas County and until their separation, the husband had raised cattle, renting two farms, on occasion, and pasturing some cattle on the wife's son's farm at no cost to the husband. The tax returns reflected continuous losses for husband's cattle business, i.e., 1981, $12,234.00 loss; 1982, $7,973.00 loss; 1983, $4,025.00 loss; 1984, $5,938.00 loss.

At the time of trial, the Texas County real estate was being offered for sale at $65,000.00 but had not been sold. The loan taken out on the real estate, when purchased, had been paid off several years before the separation when the husband sold 70 head of cattle that were accumulated during the marriage. The cattle sale proceeds were used to pay the remaining balance on the real estate loan. At the time of separation, the wife had sold the remaining cattle on the farm for $4,720.94 and had taken $2,441.37 out of a joint account, none of which she had shared with husband. The wife's son had either bought or provided the funds for certain personal property acquired during the marriage, such as lawn mower, garden tiller, weedeaters, wheelbarrow; and furniture items, such as living room suite, breakfast set,

microwave, television, deep fryer and food processor.

Substantial effort was devoted at trial to proving husband's misconduct with a female bartender. From the record, husband's association with the other woman had started in early 1988, and he was seen in her company on several occasions. On some of those occasions, the other woman was sitting close to husband in his truck; once they were seen kissing; they were seen at the tavern together; and they were seen together entering the other woman's house.

The standard of appellate review of dissolution cases is the same standard as in other court-tried cases. *Dove v. Dove,* 773 S.W.2d 871, 872 (Mo.App.1989). This court must affirm the trial court's judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Due regard is to be given to the opportunity of the trial court to have judged the credibility of witnesses. Rule 73.01(c)(2).[1] Deference is given the trial judge even if the evidence might support a different conclusion. *Ware v. Ware,* 647 S.W.2d 582, 584 (Mo.App.1983).

The trial court's order recites that the court took into consideration the statutory factors in dividing the property. The statute referred to is § 452.330, RSMo Supp. 1990, which reads, in part:

1. In a proceeding for dissolution ... the court shall set apart to each spouse his nonmarital property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of the property is to become effective ...;

(2) The contribution of each spouse to the acquisition of the marital property ...;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage;

....

The trial court's division of assets does not have to be an equal or even division; it merely has to be fair and equitable and take into account the statutory factors. *Dove, supra; Russell v. Russell,* 740 S.W.2d 672, 674 (Mo.App.1987); *Ware, supra.* Disparity in the value of marital property awarded each spouse is justified if any of the relevant factors, statutory or otherwise, justify an unequal division. *Wilk v. Wilk,* 781 S.W.2d 217, 222 (Mo.App. 1989). Such relevant factors include the husband's misconduct, *In re Marriage of Pew,* 780 S.W.2d 687 (Mo.App.1989), and the fact that approximately $61,850.00 of the wife's separate property was contributed to the acquisition of marital property or used for living expenses of husband and wife. *McDonough v. McDonough,* 762 S.W.2d 827, 830 (Mo.App.1980); *Mika v. Mika,* 728 S.W.2d 280, 283 (Mo.App.1987).

Husband's contribution from separate property was minimal and given the money spent during the marriage, the limited income for each party during the marriage, the significant losses from the cattle raising operation as reflected in the income tax returns and all other evidence, this court cannot say there was an abuse of discretion by the trial judge. A percentage is not controlling or meaningful unless it is considered together with the nature and extent of the property to be divided. *Klenke v. Klenke,* 742 S.W.2d 621, 623 (Mo.App. 1987). The division in this case left most of the liquid assets to the husband. The fact that the trial court's award resulted in the wife receiving a considerably higher percentage of the marital assets than the husband is not per se an abuse of discretion. *Buchheit v. Buchheit,* 768 S.W.2d 641, 642 (Mo.App.1989); *Cook v. Cook,* 706 S.W.2d 606, 607–608 (Mo.App.1986). Appellate courts of this state have upheld divisions of marital property of 4 percent to 9.5 percent

---

1. References to rules are to Missouri Rules of Civil Procedure (19th ed. 1988), except where otherwise indicated.

to wife, balance to husband, *Dove v. Dove, supra;* 75 percent to 25 percent, *Buchheit v. Buchheit, supra;* 84 percent to 16 percent, *Mika v. Mika, supra,* at 283; 72 percent to 28 percent, *Arp v. Arp,* 572 S.W.2d 232 (Mo.App.1978); 88 percent to 12 percent, *In re Marriage of Burris,* 557 S.W.2d 917, 918 (Mo.App.1977).

This court finds no abuse of discretion in the trial court's division of marital property or awarding of separate property.

The judgment is affirmed.

HOGAN, C.J., and MAUS, J., concur.