Betty Jean RACE, Petitioner–
Respondent,

v.

John R. RACE, Respondent–Appellant.

Betty Jean RACE, Petitioner–Appellant,

v.

John R. RACE, Respondent–Respondent.

No. 17452, 17462.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 14, 1992.

Marily A. Braun, Springfield, for respondent-appellant.

Susan S. Metzger, William W. Kirchoff, Yates, Mauck, Bohrer, Elliff, Croessmann & Wieland, P.C., Springfield, for petitioner-respondent.

FLANIGAN, Chief Judge.

This action for dissolution of marriage was instituted by Betty Jean Race against her husband John R. Race. The parties, who will be referred to by their first names, were married on January 10, 1964, and separated in January 1990, when this action was filed.

Three sons were born to the marriage. John F. was born in 1964, and Gene and Galen, who are twins, were born in 1966. Galen has mental and physical handicaps, for which he receives social security benefits, and he makes his home with Betty. At the time of trial, Betty was 59 and John was 66, and both were in good health.

In its judgment dissolving the marriage, the trial court treated all of the assets, both real and personal, of the parties as marital property, made unchallenged valuations of those assets, and divided them equally. Betty's share was $145,969.24, and John's share was $145,969.23. To effect that equalization, John was ordered to pay Betty a sum of money secured by a lien on real estate awarded to John. Later, the trial court made a minor adjustment in the division of the marital property because of an error in valuing a checking account. Neither party complains of that adjustment. The judgment ordered John to pay Betty $200 per month as maintenance until Betty "reaches the age of 65 or until she receives social security benefits, whichever

first occurs." The parties filed separate appeals.

On his appeal, John asserts that the trial court erred in treating a herd of cattle as marital property. The cattle were awarded to John as a portion of his share of the marital property. John also contends that the trial court erred in awarding maintenance to Betty.

On her appeal, Betty claims that the trial court erred in treating as marital property certain assets which she inherited from her mother who died during the marriage. The disputed assets were awarded to Betty as a portion of her share of the marital property. Betty also contends that the trial court erred in denying her request for attorney's fees.

Appellate review of this court-tried case is governed by Rule 73.01(c) as construed in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evidence to support it or it is against the weight of the evidence or it erroneously declares or applies the law. Due regard shall be given to the opportunity of the trial court to have judged the credibility of witnesses.

■ Section 452.330, RSMo Supp.1991, defines "marital property" for the purposes of dissolution actions and reads, in pertinent part:

2. ... "[M]arital property" means all property acquired by either spouse subsequent to the marriage except:

(1) Property acquired by gift, bequest, devise, or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

.    .    .    .    .

(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

3. All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of coownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2 of this section.

4. Property which would otherwise be nonmarital property shall not become marital property solely because it may have become commingled with marital property.

The trial court treated as marital property the herd of cattle. John's position in the trial court was that the cattle herd belonged to his sons, John F. and Gene.

Gene testified at the trial and made no claim of ownership. Gene testified that in 1987 a tax return was filed for Race Brothers Simmental, a partnership consisting of John, John F. and Gene. There was no written partnership agreement. Gene said he understood the partnership was for tax purposes. Gene never paid any taxes on the cattle or reported income from their sale or claimed any expenses. He did not know what expenses were paid out of the partnership. He left that up to John. He said that before November 1989 there was no partnership account and cattle expenses prior to that time were paid out of the joint checking account of Betty and John.

Betty testified that the partnership checking account was created with marital funds and that some of John's personal expenses were paid out of the account. Betty testified that the boys had no interest in the herd and that all of the cattle expenses were paid by marital funds.

An accountant testified that he had examined the tax returns of the partnership and of John and Betty, that there were some problems with the returns and that John had an interest in the cattle.

John testified that Gene told John the cattle were not Gene's. John also testified

that he would be happy to give Betty half the cows, "I have already offered her that."

John F. did not testify. When John F. was divorced, he did not list ownership in the cattle as a marital or personal asset.

Only John paid personal property taxes on the cattle, all of which were acquired after the marriage. Neither John F. nor Gene worked with the cattle after they developed an interest in school athletics. Neither John F. nor Gene paid any of the cattle expenses. John and Betty claimed those expenses as income tax deductions. The cattle at all times remained at the rural home of Betty and John, and for the last several years only John took care of them. When a cow was sold, John and Betty reported the gain on their joint income tax return. The trial court found that the filing of the partnership tax return, beginning in 1987 after John had retired, was done to give some tax benefits to Gene and John F.

This court holds that the trial court properly treated the herd as marital property.

■ Although Betty testified that she inherited certain funds from her mother, they were reinvested in other securities, none of which was introduced into evidence. Betty introduced an exhibit which purported to be a summary of the securities, Exhibit 12. That exhibit is entitled "Galen Race Trust Monies." Betty's brief says, "The inherited funds were simply placed in a separate trust in the Race Family Trust and were kept separate from the other assets in the trust."

A lengthy trust instrument entitled "The Race Family Trust" was introduced into evidence. Betty and John are the settlors and the trustees. The trust is revocable by Betty and John and contains broad provisions for spending the corpus and income for their benefit. The "Galen Race Trust Monies" are apparently included in the Race Family Trust.

Although Betty testified that the securities were on deposit in her name as trustee for Galen, she did not introduce those securities into evidence. She also testified that she understood that she could put the money for Galen in the Race Family Trust but it would be treated separately. The trial court found that at the time of the execution of the trust all of the assets of the parties, other than cattle and farm equipment, were placed in the trust. It is at least inferable that the securities were titled in the Race Family Trust.

John testified, without objection, that $43,000, currently held in "two Universal Life insurance policies and a small CD," was marital property. That testimony apparently referred to the securities listed in Exhibit 12.

Although Betty refers to the Galen Race Trust as a "trust within a trust," the Race Family Trust contains a provision that the settlors "retain the absolute right to amend, alter or revoke such part of [sic] all of 'The Race Family Trust' as they may desire to amend, alter or revoke including the funds set aside for the benefit of Galen Roderick Race." It also contains this provision: "If it becomes necessary to interpret any provision of this trust, it is specifically intended that this portion of the trust does not create any rights in Galen Roderick Race as a beneficiary." There was testimony that if Galen were to become the owner of any property, his social security benefit would be adversely affected.

The trial court in its judgment states: "After examining the trust document as a whole, the court finds that the parties to this lawsuit were the beneficial owners of that portion of the trust, and not Galen Roderick Race." That statement is supported by the record.

Although Betty's brief asserts that she "did not commingle her inherited funds at all," her brief concedes that "the inherited funds were simply placed in a separate trust in the Race Family Trust," and she presents certain arguments "assuming that a commingling has even occurred."

"Property which would otherwise be nonmarital property shall not become marital property solely because it may have become commingled with marital property." § 452.330.4.

The execution of the Race Family Trust placed broad powers in Betty and John, both as settlors with power to revoke and as trustees with power to control the trust assets. This treatment of the challenged securities constituted more than "mere commingling." *Doll v. Doll*, 819 S.W.2d 739, 740–741[1] (Mo.App.1991). See also *Drikow v. Drikow*, 803 S.W.2d 122, 126[3,4] (Mo.App.1990); *In re Marriage of Smith*, 785 S.W.2d 764, 766–767[2] (Mo. App.1990).

In *Doll* the court said, at 740–741:

Here, husband placed the funds from his nonmarital property into a separate account. Then, he placed those funds into a joint account with his wife. Thereafter, he and his wife placed the joint account funds into a trust with other clearly marital property. All of the property in the trust was titled in the name of "The Francis and Josephine Doll Trust dated December 16, 1987." Together, these actions clearly constitute more than the mere commingling contemplated by [§ 452.330.4]. Further, husband did not show the transfer of the funds into joint names and into a joint trust was not a settlement of gift to wife.

In *Smith* the court said, at 767:

[T]he transfer of separate funds into a jointly titled account creates a presumption that the transfer was intended as a gift to the other spouse; the transferred funds being presumptively marital. We do not believe that RSMo § 452.330.4 reverses this presumption. Additionally, the act of placing this money into an account which is titled, or owned, jointly by both parties constitutes more than "solely" commingling separate property with marital property. (Citing authorities.)

It happens that the value of the cattle is only slightly less than the value of the assets which Betty disputes. Neither Betty nor John complains of the manner in which those items were distributed. The complaints relate only to their classification. There was evidence which supported the trial court's classification.

This court has reviewed the lengthy transcript and numerous exhibits in light of the other contentions of the parties. The record supports the maintenance award to Betty and the denial of her request for attorney's fees.[1] Review under *Murphy* standards discloses no error. No precedential purpose would be served by discussing those matters. Neither appeal has merit.

The judgment is affirmed.

MAUS and MONTGOMERY, JJ., concur.

---

1. Although the trial court denied Betty's request for an award of attorney's fees, it found John to be in contempt of court for violating the terms of an earlier restraining order. The judgment provided that John "may purge himself of contempt by paying to [Betty's attorney] the sum of $2,000 as a portion of [Betty's] attorney's fees." The record does not show if that sum was paid.