**Alva D. SPIDLE, Respondent,**

v.

**Vera Sue SPIDLE, Appellant.**

**No. 17956.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 16, 1993.

Motion for Rehearing or to Transfer
Denied May 10, 1993.

Dan K. Purdy, Osceola, for appellant.

Jeffrey L. Dull, Baker & Dull, Osceola, for respondent.

FLANIGAN, Judge.

This action for dissolution of marriage was instituted in July 1991 by Alva Spidle against his wife Vera Sue Spidle. The parties, who will be referred to by their first names, were married on June 1, 1985, and separated on June 30, 1991. No children were born of the marriage. Vera has two minor children born of a prior marriage. After an evidentiary hearing, the trial court entered its decree which dissolved the marriage and classified and distributed property. Vera appeals.

The principal matter in dispute is the trial court's classification, as Alva's separate property, of a 30–acre tract of land in St. Clair County where the parties made their home.

Alva and Vera commenced cohabiting in October 1981. On March 1, 1984, Alva entered into a "Contract for Deed" with Randy Mackey and his wife, the owners of

the tract. The total purchase price was $13,500. Alva made an initial down payment of $800 when the contract was executed, and made monthly payments of $150 until December 30, 1984, when other real estate owned by Alva was sold. Alva applied the proceeds of that sale to the balance due on the contract for deed. On January 17, 1985, several months prior to the marriage, the Mackeys executed a warranty deed in which the grantees were "Alva D. Spidle and Vera Sue Spidle, husband and wife." Vera admitted that she had not put any "cash money" into the 30–acre tract.

Before the marriage, Alva commenced construction of a house on the tract. The trial court awarded the 30–acre tract and the improvements to Alva. The trial court's judgment included the following:

The Court finds that while [Vera's] name appears on the deed to this real estate that it was not placed thereon either by or at the direction of [Alva], but rather at the instance of the scrivener, whomever in fact that may have been. [Alva] has by his evidence established that he intended to make no gift to [Vera], which evidence is sufficient to overcome the presumption that this real estate is marital property. However, marital funds were to some degree applied to the construction of the residence. This residence is valued by the Court at $7,500.00 apart from the land; testimony indicated that it was 85% complete at the time of marriage. The Court finds that 15% of the residence value, or $1,125.00, is traceable to marital funds. The balance of the residence value and the land and outbuildings trace directly to the nonmarital assets of [Alva]. The Court therefore enters judgment against [Alva] and in favor of [Vera] in the sum of One Thousand One Hundred and Twenty-five Dollars ($1,125.00), representing 100% of the marital contribution.

Vera contends that the trial court erred in classifying the 30–acre tract as the separate property of Alva for the reason that it was marital property. Vera also contends that the trial court erroneously classified, as the separate property of Alva, a 1972 Ford truck and a Troy–Bilt tiller. She claims that those two items were also marital property. She contends that these misclassifications resulted in an unfair distribution of marital property.

Vera does not argue that she and Alva, prior to the marriage, each had an undivided one-half interest in the 30–acre tract which should have been classified as the separate property of each. She argues that the tract is marital property. Evidence of the value of the 30–acre tract, together with improvements, varied from a low of $15,250 (Vera's evidence), to a high of $20,000 (Alva's evidence). The trial court made no express finding with regard to the value of the tract with improvements.

The trial court made the following property classification and distribution:

| ALVA: | | | VERA: | |
|---|---|---|---|---|
| Separate Property | | | | |
| 30–acre tract | [$15,250 to $20,000] | | None | 0 |
| 1972 Ford truck | 300 | | | |
| Troy–Bilt tiller | 400 | | | |
| Misc. equipment | 4,235 | | | |
| | + $20,185 to $24,935 | | | |
| Marital Property | | | | |
| Misc. equipment | + $10,675 | | Misc. household goods | + $5,435 |
| Marital Debts | | | | |
| To be paid by Alva | − 9,765.96 | | To be paid by Vera | − 573 |

| Judgment in favor of Vera | − 1,125.00 | | Judgment in favor of Vera | + 1,125 |
|---|---|---|---|---|
| Net | + 19,969.04 to $24,719.04 | | Net | + 5,987 |

Section 452.330 [1] reads, in pertinent part:

1. In a proceeding for dissolution of the marriage ... the court shall set apart to each spouse his nonmarital property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) ...

2. For purposes of sections 452.300 to 452.415 only, *"marital property"* means all property acquired by either spouse subsequent to the marriage except:

(1) ...

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) ...

(4) ...

(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

3. All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2 of this section.

4. Property which would otherwise be nonmarital property shall not become marital property solely because it may have become commingled with marital property.

The initial inquiry is whether the trial court ruled properly in classifying the 30-acre tract as Alva's separate property and in classifying the residence situated on that tract as Alva's separate property except for 15 percent of the value of the residence, the portion of it completed after the marriage, which was classified as marital property.

Title to the tract was conveyed to Alva and Vera, who were described in the deed as husband and wife. Alva and Vera had not yet married. In *Anderson v. Stacker*, 317 S.W.2d 417 (Mo.1958), such a deed, where the parties never married, was held to create a tenancy in common in the grantees. See, generally, 9 A.L.R.4th 1189, (Estate Created—Deed to Unmarried Persons). Other Missouri cases, involving a similar deed where the grantees never married, are in accord. *Richardson v. Kuhlmyer*, 250 S.W.2d 355 (Mo.1952); *Bass v. Rounds*, 811 S.W.2d 775 (Mo.App.1991); *Montgomery v. Roberts*, 714 S.W.2d 234 (Mo.App. 1986); *Brooks v. Kunz*, 637 S.W.2d 135

---

**1.** All references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

(Mo.App.1982); *In re Estate of Kranitz,* 610 S.W.2d 300 (Mo.App.1980); *Brooks v. Kunz,* 597 S.W.2d 183 (Mo.App.1980); *Atkinson v. Dasher,* 588 S.W.2d 215 (Mo.App. 1979); *Keller v. Porchey,* 560 S.W.2d 257 (Mo.App.1977). In that situation, those cases hold that in a partition action or similar proceeding involving a division of the property interests of the grantees, the division is based on the respective contribution of each grantee to the purchase price and any improvements. The Missouri rule has been criticized. *Estate of Wilson,* 740 S.W.2d 694, 697 (Mo.App.1987); *Kranitz,* 610 S.W.2d at 303; *Brooks v. Kunz,* 597 S.W.2d at 187.

Here the parties did marry after they jointly obtained title to the land. Alva's pleading made no request for reformation of the deed. "[T]he burden is upon those seeking reformation of a deed to show by clear and convincing evidence that it did not express the true agreement of the parties by reason of their mutual mistake." *State v. DeMarco,* 422 S.W.2d 644, 648[4] (Mo.1968).

Although Alva argued in the trial court that Vera's name appeared on the deed because of a mistake of the scrivener, and the trial court so found, this court does not agree with that finding. Vera testified that when the deed was prepared at the office of grantor Randy Mackey, who is a realtor, Mackey asked Alva how the grantees should be designated on the deed, and Alva replied, "Alva Spidle and Vera Spidle." Mackey testified that he would not have put Vera's name on the deed "without the okay" of Alva, and that Alva was the one who would have told him "to put Vera's name on there as his wife." Alva's testimony was that he did not recall any of the transaction. Asked whether he ever told anybody to put Vera's name on the deed, Alva's answer was, "not to my knowledge, no."

■ If the marriage had taken place prior to January 17, 1985, the date of the deed, and even if Alva originally had been the sole owner, Vera would be favored by two rules enunciated in *Stephens v. Stephens,* 842 S.W.2d 909, 913[1, 2] (Mo.App.

1992): The placing of separate property of a spouse into the joint names of both spouses creates a presumption that the property transferred becomes marital property, and clear and convincing evidence is required to show the transfer was not intended as a gift; property acquired after marriage which is placed in joint names is presumed to be marital property, even if one spouse furnished all the consideration.

■ Marriage dissolution cases involving the classification of real estate, the title to which was held by one or both of the spouses prior to the marriage, include: *R.D. v. J.D.,* 764 S.W.2d 744 (Mo.App.1989); *Hill v. Hill,* 747 S.W.2d 718 (Mo.App.1988); *Lipe v. Lipe,* 743 S.W.2d 601 (Mo.App. 1988); *Bashore v. Bashore,* 685 S.W.2d 579 (Mo.App.1985); *F.W.H. v. R.J.H.,* 666 S.W.2d 910 (Mo.App.1984); *Murphy v. Murphy,* 613 S.W.2d 450 (Mo.App.1981); *McKenna v. McKenna,* 607 S.W.2d 464 (Mo.App.1980).

In *F.W.H. v. R.J.H.,* record title was in both names prior to the marriage. In the other cases, record title was in the name of the man alone, although in *Lipe* the title was joint before the woman quitclaimed her interest to the man. In *Hill,* the parties cohabited prior to the marriage.

In *McKenna,* the trial court treated the residence as marital property and awarded the wife one-half interest. The court of appeals held that the house was the husband's separate property and that the wife's claim that the husband had made an oral promise to convey was not supported by evidence sufficient to overcome the statute of frauds.

In *Murphy,* the court of appeals affirmed that portion of the judgment of the trial court which found that the house was the separate property of the husband. The husband's evidence showed that the house was not purchased in contemplation of marriage and that he used his separate funds in making additions to the house. His evidence also showed that the wife made neither financial nor nonfinancial contributions to the additions.

In *F.W.H. v. R.J.H.*, the parties purchased a residence prior to their marriage. Both parties were named as grantees in the deed and were described as single persons, the wife's maiden name being used. Both parties signed the purchase money note. The property was mortgaged and the equity was worth approximately $2,700. The trial court classified the real estate as marital property, and awarded the property to the husband and ordered him to pay the note and to hold the wife harmless. The court also awarded the wife $1,000 as her share of the real property.

On her appeal, the wife contended that the trial court erred in treating the residence as marital property and argued that it should have been excluded from the trial court's jurisdiction because it was acquired prior to the marriage and that the court had only the power to set aside the property as separate property to the tenants in common. Rejecting those arguments, the court of appeals held that the trial court acquired jurisdiction of the property of the spouses to determine whether it was separate or marital property and to set it aside or divide it in accordance with § 452.330. The court held that there was evidence from which the trial court could find that the parties intended the house to be marital property. There was testimony that it was purchased in contemplation of marriage and was intended to be used as the marital home. The court held that the trial court properly classified the residence as marital property and that the trial court properly terminated, without recourse to further litigation, all unity of possession as well as unity of title.

In *Bashore*, the parties, prior to their marriage, opened a bank account in their joint names. Each made deposits to the account. Also prior to the marriage, the husband drew a check on the account and purchased a building lot. The deed named him as sole grantee. Later the parties were married and built a residence on the lot. Both signed the loan documents.

The trial court classified the property as the separate property of the husband. The court of appeals pointed out that the trial court relied on cases which antedated and which were overruled by *Hoffmann v. Hoffmann*, 676 S.W.2d 817 (Mo. banc 1984). The court said, 685 S.W.2d at 583:

In *Hoffmann*, the court reviewed the two major theories used in determining whether property is, under statutory terminology, acquired prior to the marriage and is thus separate property. Under the title theory, property is classified as of the date title passes and if one spouse obtains the title before the marriage, the property remains separate even though marital funds may later be spent to improve the property or reduce a mortgage debt. The *Hoffmann* opinion rejects this theory as one not previously approved by that court and adopts instead the "source of funds" theory.

Under this rule, the character of the property is determined according to the source of the funds which finance the purchase. Thus all property on which marital funds are expended is marital property regardless of the date of acquisition and status of title. So, too, is the increase in the value of such property subject to division because its reclassification eliminates the constraint of § 452.-330.2(5), RSMo.Supp.1983.

In the present case, applying the controlling authority of *Hoffmann, supra,* the family residence is marital property and must be divided between the parties based on the four factors set out in § 452.330.1, RSMo.Supp.1983. This follows because [the wife's] funds contributed to acquisition of the asset, first by payment from the joint bank account to purchase the building lot and second, by the use of marital funds for mortgage reduction payments. *The fact that [the husband's] name alone appears on the record title is irrelevant.* (Emphasis added.)

In *Lipe*, the court of appeals affirmed the judgment of the trial court which awarded the residence to the husband as his separate property, but awarded the wife 50 percent of the marital interest in the property. The trial court set forth a formula for calculating the marital interest, which had previously been stated in *In*

*re Marriage of Herr,* 705 S.W.2d 619 (Mo. App.1986).

In *Hill,* the trial court classified the improved real estate as the husband's separate property. The evidence showed that the husband used nonmarital funds to make the down payment and one mortgage payment on the real estate. Following the marriage, all mortgage payments were made from marital funds. The court held, at 719, that under the "source of funds rule," property is considered to be acquired not when title passes, but as it is paid for, and that incremental property values are allocated proportionately to either marital or separate property according to the source of funds used to purchase the property. The court utilized the formula set forth in *Herr.*

In *R.D. v. J.D.,* the trial court found the marital home was the husband's separate property except for a portion allocated to marital property. The husband purchased the property and began construction of the house prior to the marriage. The house was approximately two-thirds complete when the parties married. The house was completed with the proceeds of a loan made after the marriage and repaid from marital funds. Affirming the judgment, the court of appeals said, at 746: "The marital community was entitled to a share in the property to the extent the increase in value, here the completion of the house, was attributable to an investment of marital funds." The court also said that the marital estate was properly granted an interest in the marital home under the "source of funds rule" stated in *Hoffmann.*

This court holds that the 30–acre tract should have been classified as marital property and not as Alva's separate property. The deed was in both names and, despite the finding of the trial court to the contrary, Alva's evidence was not clear and convincing so as to entitle him to reformation of the deed. *F.W.H. v. R.J.H.* generally supports this finding. Compare *Rapp v. Rapp,* 789 S.W.2d 148 (Mo.App.1990), where a deed to the residence, apparently acquired after the marriage, named both husband and wife as grantees and the hus-

band's evidence fell short of meeting the standard of proof required for reformation.

Usually when a court finds that property contains both separate and marital interests, the property was originally separate. In the case at bar, however, the 30–acre tract was jointly titled in Alva and Vera before Alva applied his materials and his labor to the 85 percent of the residence which was constructed prior to the marriage. The residence became a fixture, and title to it would have passed to a subsequent grantee of the land absent a reservation in the deed. On this record, it is unnecessary to consider whether the commingling provision of § 452.330.4 might be implicated so as to preserve to 85 percent of the fixture its classification as Alva's separate property or whether that 85 percent was a gift to Vera as a co-owner. See *Race v. Race,* 824 S.W.2d 509, 511–512 (Mo.App.1992), and *In re Marriage of Smith,* 785 S.W.2d 764, 767 (Mo.App.1990), each containing a discussion of § 452.330.4. Vera has not raised that issue.

■ Error by the trial court in classifying property is not necessarily prejudicial error. *Stephens v. Stephens,* 842 S.W.2d 909, 915[5] (Mo.App.1992); *In re Marriage of Garrett,* 654 S.W.2d 313, 316[1] (Mo. App.1983). This court does not reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action. Rule 84.13(b).

*In Rapp v. Rapp, supra,* the court said, at 152:

A trial court is vested with considerable discretion in dividing marital property and an appellate court will interfere only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. *Cartwright v. Cartwright,* 707 S.W.2d 469, 474 (Mo.App.1986). Equal division of property is not required and disproportionate divisions are routinely affirmed. *Mika v. Mika,* 728 S.W.2d 280, 283 (Mo. App.1987).

Vera contends that the trial court erroneously classified a 1972 Ford truck and a Troy–Bilt tiller as the separate property of

Alva. The record supports that classification under § 452.330.2(2).

■ Although this court agrees with Vera that the 30–acre tract should have been classified as marital property, the error was not prejudicial. The trial court did treat that portion of the house which was completed after the marriage as marital property and awarded all of that portion to Vera. Vera admitted that she was not the source of any of the funds for the purchase of the tract, and that Alva was the sole source. Although Vera offered testimony that she participated significantly in constructing the portion of the residence built prior to the marriage, Alva offered evidence that she contributed nothing to that construction, and the trial court accepted Alva's version.

There was no evidence of misconduct on the part of either of the parties. The trial court properly considered the factors enumerated in § 452.330.1(1), (2), and (3). At the time of the hearing, Vera was working part-time as a house cleaner and cook, with a gross pay of $432 a month. Alva was not employed and was receiving workers' compensation of $266 a week. He testified that his doctor did not think he would ever be able to return to his job. The trial court found that the house was 85 percent completed before the marriage took place, and awarded what it calculated to be the entire marital interest, $1,125, to Vera. The value of the nonmarital property set apart to each spouse is shown in the table.

After consideration of the record, and mindful of its authority to make various dispositions of the appeal, including giving "such judgment as the court ought to give," Rule 84.14, this court concludes that the division of the marital property was a just division. See *Dardick v. Dardick,* 670 S.W.2d 865 (Mo.1984).

The judgment is affirmed.

MONTGOMERY, P.J., and GARRISON, J., concur.