In re the MARRIAGE OF Dwight
JENNINGS and Melvina
Jennings.

Dwight JENNINGS, Petitioner–
Respondent,

v.

Melvina JENNINGS, Respondent–
Appellant.

No. 20077.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 9, 1995.

Spencer L. Edwards, Dempster, Barkett, McClellan & Edwards, Sikeston, for appellant.

Michael L. Jackson, Buerkle, Beeson, Ludwig, Wilson & Jackson, L.C., Jackson, for respondent.

GARRISON, Judge.

This is an appeal from a dissolution of marriage decree in which Appellant, Melvina Jennings (Wife), contends that the trial court erred in the classification and division of property. We affirm.

The parties were married on June 6, 1992, and separated on July 3, 1994. The marriage was the first for Dwight Jennings (Husband), who was then a sixty-six year old retired farmer, and it was the third for Wife, who was apparently then fifty-seven.[1] Husband's health quickly deteriorated, and he was hospitalized on their honeymoon. During the marriage, Husband had a stroke, pneumonia, and carotid artery surgery, all of which required more than four hospitalizations. Wife took a leave of absence from her job at a nursing home[2] shortly after the marriage in order to care for Husband as a result of his health problems. She returned to that job for only two or three days during the marriage.

Prior to the marriage, Husband had five certificates of deposit at the Bank of Advance totalling $151,000, all of which provided that they were "payable on death to Melvina Daniels" (Wife's former name). On January 7, 1993, all five certificates were changed to "Dwight Jennings or Melvina Jennings As Joint Tenants With Right of Survivorship."

The trial court set aside the following to Husband as his separate property: the C.D.'s, an eighty-acre farm and home which he owned before the marriage, the contents of the house except for two televisions and miscellaneous items, a 1992 Chevrolet pickup, a 1951 tractor, and a $27,500 promissory note dated prior to the marriage. It set

---

1. The record does not disclose Wife's exact age at the time of the marriage.

2. The record does not disclose the nature of Wife's job at the nursing home where she had worked for over seven years and from which she was earning $4.70 per hour.

aside to Wife, as her separate property, three parcels of real estate in Bell City, Missouri; checking and savings accounts in her name of undisclosed amounts; and savings bonds valued at $300.

The trial court determined that a checking account at the Bank of Advance, which contained $30,230.70 at the time of the separation, was marital property.[3] It awarded $5700, removed by Wife from the checking account shortly after the separation, to her and awarded the balance of the account to Husband. It also awarded the following items of marital property to Wife: a 1994 Pontiac automobile valued at $18,000, a prepaid burial policy for which Husband had paid $6000, a 27″ T.V., and other miscellaneous items. Husband was awarded the following items of marital property, in addition to the remainder of the money from the checking account: a $6000 burial policy, a 27″ T.V., and a VCR.

In determining that Husband should receive all of the C.D.'s, the trial court made the following findings:

> The Court finds that those funds represented by the Certificates of Deposit ... were accumulated by the [Husband] prior to the parties' marriage, with no contribution from the [Wife]. The court further finds that the Certificates have not been converted to marital property by gift or otherwise. The Court has, nevertheless, considered the value of these Certificates of Deposit in arriving at a just division of property and finds that even were the Certificates deemed to be marital property, this Court, upon consideration of all relevant factors, including those set forth in Section 452.330 RSMo., would award no portion of the Certificates to the [Wife]; nor would the Court otherwise alter its division of the remaining items of marital personal property were the Certificates of Deposit deemed to be marital property.

The standard for appellate review of a court tried case is set forth in Rule 73.01(c), V.A.M.R., as construed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32. Under this standard of review, considerable deference is accorded judgments based on evidentiary and factual evaluations by the trial court. *In re Marriage of Fry*, 827 S.W.2d 772, 775–76 (Mo.App.S.D.1992). No such deference is accorded the judgment, however, when the law has been erroneously declared or applied. *Id.* at 776.

Wife contends, in her first point, that the trial court erroneously declared and applied the law in finding that the C.D.'s were Husband's separate property, as opposed to being part of the marital estate. She argues that they "were gifted to the marital estate when the Husband titled the certificates jointly."

The placing of separate property of a spouse into the joint names of both spouses creates a presumption that the property transferred becomes marital property, and clear and convincing evidence is required to show that the transfer was not intended as a gift. *Spidle v. Spidle*, 853 S.W.2d 311, 314 (Mo.App.S.D.1993); *Stephens v. Stephens*, 842 S.W.2d 909, 913 (Mo.App.S.D.1992); *Hankins v. Hankins*, 823 S.W.2d 161, 162 (Mo.App.W.D.1992). *See also Kettler v. Kettler*, 884 S.W.2d 729, 732 (Mo.App.E.D.1994). The clear and convincing evidence standard refers to evidence which instantly tilts the scales in the affirmative when weighed against the evidence in opposition, and the fact finder's mind is left with an abiding conviction that the evidence is true. *In re M.J.A.*, 826 S.W.2d 890, 896 (Mo.App.S.D. 1992). We note that the "source of the funds rule" adopted in *Hoffmann v. Hoffmann*, 676

---

**3.** Husband maintained the checking account prior to the marriage. The signature card for the account indicates that, although there was no designation as to whether the account was to be jointly owned, Wife's name was added on July 20, 1992, so that she was also authorized to write checks on that account. The account was funded by interest earned by the C.D.'s, pasture rent received by Husband, $1,000 per year received by Husband for the sale of sand from his farm, and interest from the $27,500 promissory note.

S.W.2d 817, 825 (Mo. banc 1984), does not prevent a spouse from transmuting an item of separate property into marital property. *Kettler v. Kettler,* 884 S.W.2d at 732; *Stephens v. Stephens,* 842 S.W.2d at 913; *Kramer v. Kramer,* 709 S.W.2d 157, 159 (Mo.App. E.D.1986).

According to Wife, Husband had the C.D.'s changed to joint tenancy because of his expressed desire that, if she needed to, she could get the money "if he was where he couldn't." She also testified that he told her that if something happened to him, she would be able to get the money without any problems.

The president of the Bank of Advance testified that he had no independent memory of the C.D.'s being changed. He said that while the bank's procedure was somewhat informal, typically a customer desiring a change of title to a C.D. was required to produce the certificate and give instructions to a bank employee concerning how it was to be titled. He testified that if the bank followed its ordinary procedures, the change in the certificates to joint ownership was done at Husband's direction to a bank employee.

Husband also testified concerning the changes made to the C.D.'s. He said that he told the bank about his marriage and the fact that Wife's name was now Jennings instead of Daniels (as previously listed on the certificates). He testified that his intent was to have Wife's name changed on the certificates to Jennings, and further that he told the bank that he wanted the certificates retyped so that on his death they were "payable to Melvina." He denied requesting that the C.D.'s be placed in joint tenancy with Wife and said, "I thought that I had requested for it to be payable on death, not as joint tenants." On cross-examination, Husband testified:

Q. Now, prior to the change in this certificate of deposit, you've been in the hospital and been sick and she had been helping to take care of you; isn't that right?

A. That's right.

Q. Okay. Wouldn't be unusual if you'd called the bank and said, "I want the certificates of deposit jointly titled," would it, under those circumstances?

A. Well, now, that's a hypothetical question. I wouldn't know.

Q. Well, I guess I'm asking you if that's what you did.

A. No. I don't recall.

Q. Okay.

A. I don't recall.

Husband had possession of the C.D.'s with the words "Dwight Jennings or Melvina Jennings As Joint Tenants With Right of Survivorship" typed on the face of them from January 7, 1993 until the separation in July, 1994, but denied knowing that they were held in joint tenancy. However, he apparently understood the significance of the joint tenancy language, because when asked who told him the C.D.'s were in joint tenancy, he testified that he got them out of the safe-deposit box at the time of the separation "and looked at them and seen they was." He then had them retitled in his name alone.

In *Spidle v. Spidle,* 853 S.W.2d 311, the issue was whether a jointly titled tract of land was marital property. The husband argued that his wife's name had been placed on the deed as a result of a scrivener's error. He testified, however, that he did not recall any of the transaction and, when asked if he told anyone to place his wife's name on the deed, said "not to my knowledge, no." The preparer of the deed testified that he would not have placed the wife's name on the deed without being told by husband to do so, and the wife testified that her name was placed on the deed at the husband's instruction. This court held, under those circumstances, that the husband's evidence was not clear and convincing, and that the trial court erred in finding that the land was husband's separate property. *Id.* at 316.

In the instant case, Husband, in effect, denies an intent to transmute the C.D.'s into marital property. Intent, however, relates to the time of the acts in question, and is not nullified by afterthoughts of regret. *See Layton v. Layton,* 673 S.W.2d 462, 464 (Mo. App.E.D.1984). The evidence presented by Husband, by which he sought to convince the trial court that he had not intended to make a gift by placing Wife's name on the C.D.'s,

was not sufficient to instantly tilt the scales in the affirmative when weighed against the evidence in opposition, as required under the clear and convincing evidence standard. We therefore hold that, under the facts here, the trial court erred in finding that the C.D.'s were Husband's separate property instead of part of the marital estate.

■ Error in classifying property is not necessarily prejudicial, however, unless it materially affects the merits of the action. *See Spidle v. Spidle,* 853 S.W.2d at 316; *Stephens v. Stephens,* 842 S.W.2d at 915. This court holds that, under the circumstances of this case, the error was not prejudicial and does not require a reversal for the reasons specified in our discussion of Wife's next point.

As we understand Wife's last point, she alleges that it was an abuse of discretion for the trial court to find that even if the C.D.'s were marital property, it would nevertheless distribute them to Husband, because that would result in Husband receiving a disproportionate share (88%) of the marital property, and there was an insufficient recitation of facts to justify such an award. Wife's argument on this point is directed to the disproportionate nature of such a distribution. She raises no issue about whether the decree should be interpreted as effectively making such a distribution. We also assume, without deciding, that the decree is to be construed in that manner.

In the instant case, Wife argues that by considering the C.D.'s as marital property, the marital estate totalled $199,257.15 (consisting of the C.D.'s of $151,000, the checking account of $30,257.15, and the $18,000 automobile) and that she received only 12% of that property (the automobile and the $5700 she had removed from the checking account). The decree also declared, however, that the two $6000 prepaid burial policies constituted marital property, which would result in the marital estate totalling $211,257.15. Wife was awarded the burial policy issued to her, bringing her distribution of marital property to $29,700, or 14%.

■ Pursuant to § 452.330, RSMo 1994, the trial court is to consider all relevant factors, in dividing marital property, including: (1) the economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children; (2) the contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as a homemaker; (3) the value of the nonmarital property set apart to each spouse; (4) the conduct of the parties during the marriage; and (5) custodial arrangements for minor children. These factors are not exclusive, however. *See Ray v. Ray,* 877 S.W.2d 648, 651 (Mo.App.W.D. 1994); *Whaley v. Whaley,* 805 S.W.2d 681, 682 (Mo.App.E.D.1990).

■ The division of marital property is left to the sound discretion of the trial court, and its decision will be upheld unless an abuse of discretion is shown. *Colabianchi v. Colabianchi,* 646 S.W.2d 61, 64 (Mo. banc 1983). Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Belleville v. Director of Revenue,* 825 S.W.2d 623, 624–25 (Mo. banc 1992). A reviewing court presumes the correctness of the division of marital property, and the party challenging that division bears the burden of overcoming the presumption. *Ray v. Ray,* 877 S.W.2d at 651.

■ In the instant case, the trial court found that, after considering all relevant factors, including those referred to in § 452.330, it would divide the marital property as it did, even if the C.D.'s constituted a part of the marital estate. The division of marital property does not have to be equal; it only needs to be just. § 452.330.1; *Whaley v. Whaley,* 805 S.W.2d at 682; *Dove v. Dove,* 773 S.W.2d 871, 873 (Mo.App.W.D. 1989). The fact that the trial court awards considerably more marital property to one spouse than the other is not *per se* an abuse of discretion. *Hayes v. Hayes,* 792 S.W.2d 428, 431 (Mo.App.S.D.1990). Disproportionate divisions of marital property have been

affirmed on appeal. *See Whaley v. Whaley,* 805 S.W.2d at 682 (65%–35%); *Hayes v. Hayes,* 792 S.W.2d at 429 (74%–26%); *Dove v. Dove,* 773 S.W.2d at 872 (90.5%–9.5%); *Buchheit v. Buchheit,* 768 S.W.2d 641, 642 (Mo.App.E.D.1989) (75%–25%); *Mika v. Mika,* 728 S.W.2d 280, 283 (Mo.App.E.D. 1987) (84%–16%); *Arp v. Arp,* 572 S.W.2d 232, 235 (Mo.App.W.D.1978) (72%–28%); *In re Marriage of Burris,* 557 S.W.2d 917, 918 (Mo.App.W.D.1977) (88%–12%).

This was not a lengthy marriage in which the mutual efforts of the parties produced the marital property subject to division. Instead, the marriage lasted only twenty-five months before the parties separated, and all of the marital property was brought to the marriage by Husband or was purchased with the income from the C.D.'s or his separate property. That income was also used to support Wife, some was sent to her family, and some was used to make payments on her separate property, as well as to purchase appliances for a trailer she intended to move into.

■ At the time of the dissolution, Husband was sixty-eight years old and in poor health. The C.D.'s which formed the bulk of the marital property constituted Husband's life savings, as well as money he had inherited from relatives. He had not contributed sufficient money to be entitled to social security benefits. Thus, he depended on the income from the C.D.'s, his real estate, and the promissory note for his support. Wife, who was fifty-nine at the time of the dissolution, had previously worked at a nursing home and was again looking for work. In addition, she will be eligible for social security benefits upon retirement, a circumstance that may be considered in dividing marital property. *Rudden v. Rudden,* 765 S.W.2d 719, 720 (Mo.App.E.D.1989).

It is true that the evidence indicated that Wife took care of Husband during his illnesses. This was obviously time consuming and apparently prevented Wife from working during the marriage except for a few days when her former employer needed extra help. However, the division of marital property ordered by the trial court resulted in Wife receiving property valued at $29,700.

Wife cites *In re Marriage of V__A__E__,* 873 S.W.2d 262 (Mo.App.S.D.1994), for the proposition that this court has previously reversed a dissolution decree which awarded 88% of the marital property to the wife. The facts of *V__A__E__,* however, are distinguishable. In that case, the total marital estate consisted of property valued at $13,235, including a mobile home valued at $10,000. The parties had been married seven years when they separated, there was evidence of the wife's marital misconduct, and there was no evidence that one spouse contributed more than the other toward the acquisition of the marital property. Accordingly, *V__A__E__* is not controlling here.

■ Wife also argues that the trial court's decree contained insufficient factual findings to justify awarding such a large percentage of the marital property to Husband. The decree, however, recited that the trial court had considered all relevant factors, including those specifically enumerated in § 452.330. The parties, however, did not request specific findings of fact and conclusions of law and, as a result, the trial court is considered to have found all fact issues in accordance with the result reached. *Halbrook v. Halbrook,* 557 S.W.2d 45, 46 (Mo. App.E.D.1977).

■ The standard for dividing property is flexible and balances the respective contributions resulting in fairness and manifest justness. *Id.* Under the circumstances of this case, we are unable to conclude that the trial court abused its discretion in dividing the marital property, even considering the fact that the C.D.'s were properly part of the marital estate. Husband's age, his physical condition, the extent of the property he brought to the marriage, the length of the marriage, the benefits Wife received from the marital estate and Husband's separate property during the marriage, and the fact that Wife is capable of working and will be eligible for social security benefits, all justify the judgment. *See Dove v. Dove,* 773 S.W.2d at 873–74. Although the trial court erred in determining that the C.D.'s were Husband's separate property, that error did not materially affect the merits of the action and was

not prejudicial. *See Spidle v. Spidle*, 853 S.W.2d at 316–17.

The judgment of the trial court is affirmed.

MONTGOMERY, P.J., and FLANIGAN, J., concur.