**Sally KINSEY–GEUJEN,
Appellant/Respondent,**

v.

**Richard John GEUJEN,
Respondent/Appellant.**

**Nos. WD 54390, WD 54347.**

Missouri Court of Appeals,
Western District.

Jan. 26, 1999.

Dennis Bosch, Independence, for appellant.

Richard Rose, Kansas City, for respondent.

SPINDEN, Judge.

Sally Kinsey–Geujen and Richard John Geujen complain about the circuit court's division of property in this dissolution of marriage action and about its designation of their property as marital or nonmarital. Sherrill L. Rosen, the circuit court's commissioner, entered a decision, which she denominated a "judgment," on April 1, 1997. She declared the couple's marriage dissolved and divided their property. Kinsey–Geujen and Geujen both appealed.

Because *no member of the judiciary recognized by Article V of Missouri's constitution had entered a judgment,* we remanded the case to the circuit court to permit it to enter a judgment. *See Slay v. Slay,* 965 S.W.2d 845 (Mo. banc 1998). The circuit court adopted Rosen's decision, including her findings of facts and recommendations, and issued its judgment on October 19, 1998. With the case back before us, we consider the merits of the parties' appeals.

We first consider Kinsey–Geujen's appeal. She contends that the circuit court erred in determining that money she had invested in an account owned by her and her children was transmuted into marital property when a bank erroneously deposited the funds into a joint marital checking account contrary to her request. She also contends that the circuit court erred in determining these funds were transmuted into marital property on the ground that allegedly marital funds were used to reinvest the proceeds into a new certificate of deposit and money market account to which she and her son held title.

Generally, property is nonmarital if a spouse owned it before the marriage and retained separate title to it after marriage. *Glenn v. Glenn,* 930 S.W.2d 519, 523 (Mo. App.1996). The owner's adding a spouse's name to the property's title creates a presumption that the property has been transmuted into marital property, and only clear and convincing evidence that the owner did not intend to convert the property will rebut the presumption. *Clark v. Clark,* 919 S.W.2d 253, 255 (Mo.App.1996). A party's intent is the determining factor. A commingling of nonmarital and marital property will not transmute nonmarital property into marital property unless the owner intended to convert the nonmarital property to marital property. *See* § 452.330.4, RSMo 1994; *In re Marriage of Smith,* 785 S.W.2d 764, 766 (Mo. App.1990).

Kinsey–Geujen established with clear and convincing evidence she did not intend to transmute her nonmarital property to marital property. Nothing rebutted her evidence that inadvertence—a mistake by bank personnel—caused her nonmarital property to be commingled into the checking account she held jointly with Geujen. Kinsey–Geujen testified that, when she requested the bank to redeem her investment account, she instructed bank personnel to send her a check. Instead, they transferred the money into the joint checking account. When Kinsey–Geujen discovered this error about two weeks after the transfer, she said, she immediately transferred the money to an account held by her and her son. Geujen was not aware that

the bank had deposited the money into the joint account. He did not present any evidence that Kinsey–Geujen intended that the transfer be a gift.

Geujen cites several cases in support of his contention that the bank's depositing the money into his and Kinsey–Geujen's joint account was sufficient to transmute the property to marital property: *In re Marriage of Smith,* 892 S.W.2d 767 (Mo.App.1995); *In re Marriage of Patroske,* 888 S.W.2d 374 (Mo. App.1994); *Spidle v. Spidle,* 853 S.W.2d 311 (Mo.App.1993); and *Stephens v. Stephens,* 842 S.W.2d 909 (Mo.App.1992). We distinguish these cases on their facts. In each, the spouse owning the nonmarital property intentionally transferred funds into a joint banking account or intentionally changed the title of a bank account or real estate to reflect joint ownership.

▰ Because clear and convincing evidence supported Kinsey–Geujen's position that the funds which ended up in an account owned jointly by her and Geujen were not transmuted to marital property, we agree with her that the certificate of deposit which she purchased with the money and the deposit of the remaining $3853 into a money market account were nonmarital property. She had used nonmarital money to obtain the CD and to make the deposit. She did not intend to give them to Geujen. Sections 452.330.2 and 452.330.3, RSMo 1994.

Kinsey–Geujen also contends that the circuit court erred in dividing equally the equity in the marital house, valued at $157,000, in light of her contributing $100,000 in nonmarital funds to its purchase. She argues that the circuit court should have applied the "source of funds rule" and separated nonmarital and marital portions of the property in proportion to her and Geujen's investments.

▰ Although the source of funds rule may be used in determining whether property purchased during the marriage is marital or nonmarital property, *Hoffmann v. Hoffmann,* 676 S.W.2d 817, 825 (Mo. banc 1984), it is not the only consideration. The primary consideration remains whether the contributing spouse intended to convert nonmarital

property into marital property by agreement or by gift. *Tracy v. Tracy,* 791 S.W.2d 924, 927 (Mo.App.1990). Section 452.330.3, RSMo 1994, provides that all property acquired by a married couple subsequent to the marriage is deemed to be marital property unless clear and convincing evidence is presented which shows the property was acquired in exchange for property acquired prior to the marriage pursuant to § 452.330.2(2).

▰ Kinsey–Geujen did not present evidence which overcame the strong presumption created by § 452.330.3 that her contribution of nonmarital property to purchase the marital house transmuted her nonmarital property into marital property. The house was purchased after the marriage and titled jointly in the names of the couple. Her reliance on the source of her $100,000 contribution—from sale of nonmarital property—was not sufficient. The circuit court's conclusion that all of the marital residence was marital property was supported by substantial and competent evidence.

▰ Kinsey–Geujen further complains that the circuit court erred in awarding a 1995 pickup to Geujen as his nonmarital property because Geujen used a vehicle purchased after his marriage to her to trade for the pickup. The evidence does not support her point.

Kinsey–Geujen presented a 1995 property tax receipt which included payment of taxes paid for a 1993 pickup. She testified that the 1993 pickup belonged to Geujen and was "the vehicle he owned prior to trading it in for this 1995 Dodge Ram [pickup.]" Geujen testified that his company, RJ Industries, Inc., was paying for the 1995 pickup, and its title listed the owner as "Richard Geujen, d/b/a RJ Industries, Inc." Neither party presented any evidence concerning the 1993 pickup's purchase or title.

We discern no basis for concluding that the circuit court's determination that the pickup was Geujen's nonmarital property was against the weight of the evidence. We, therefore, reject Kinsey–Geujen's point.

In his appeal, Geujen contends that the circuit court abused its discretion in awarding 60 percent of the marital property to

Kinsey–Geujen. He complains that the circuit court ignored Kinsey–Geujen's greater portion of nonmarital assets and substantial income and the parties' joint efforts in contributing equally to acquiring marital property. He contends that the unequal award was not justified.

The General Assembly mandates in § 452.330.1, RSMo 1994:

In a proceeding for dissolution of the marriage . . . , the court shall set apart to each spouse his nonmarital property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

Geujen contends that the circuit court erred in its division of property because it improperly determined the situation of the parties as it related to subsections (1), (2), and (3).[1]

■ Equal division of marital property is not the benchmark of a proper division of property. Fairness, considering the factors delineated in § 452.330.1, is. *Carter v. Carter,* 940 S.W.2d 12, 16 (Mo.App.1997). We discern no basis for ruling that the circuit court's division of property was unfair.

■ Geujen notes that the circuit court awarded $138,000 in nonmarital property and $273,000 in marital property to Kinsey–Geujen, and this made her net worth more than $400,000. He complains that this award and her income of $58,000 put her in a much better financial position than he. He admits, however, that, when he married Kinsey–Geujen, his business assets totaled more than $130,000 and that the circuit court awarded him his construction business as nonmarital property without listing a value for it. Moreover, the circuit court awarded Geujen $223,000 worth of marital assets. Income tax returns for 1990 through 1995 showed that Kinsey–Geujen's personal income was $390,235 and that Geujen's personal income was $8610. We cannot say that the circuit court abused its discretion in dividing the property in light of these facts.

■ Geujen also argues that the circuit court erred in determining that all of a $75,000 certificate of deposit acquired after the marriage was marital property even though $55,000 of the funds used to buy it came from sale of a property which he owned before the marriage. The evidence concerning Geujen's intent to retain the sale proceeds as separate property was inconclusive. In light of the directive of § 452.330.3, we discern no basis for reversing the circuit court's determination.

■ Geujen further contends that the circuit court erred in awarding to Kinsey–Geujen, as her separate marital property, stock options which her employer granted to her. He argues that, even though the circuit court ignored his valuation of the stock and determined that the stock value was unknown, it should have awarded him an undivided one-half interest in the stock options. We disagree.

Kinsey–Geujen testified that on March 14, 1995, her employer granted to her future options to purchase shares of its stock in March 1998 for $30.31 per share. At the time of trial in this case, however, her employer was being acquired by another firm, and Kinsey–Geujen testified that she did not know whether her right to exercise the stock option would survive the acquisition. Geujen opined that the stock option was worth $12,000.

---

1. Geujen also raised lack of misconduct as a basis for his appeal, but he did not support the assertion in the body of his argument, so we deem him to have abandoned the issue.

As arbiter of credibility, the circuit court was free, however, to reject his opinion and to accept Kinsey–Geujen's valuation. *Panettiere v. Panettiere,* 945 S.W.2d 533, 543 (Mo. App.1997). Geujen also ignores the circuit court's awarding to him, as his sole and separate property, another marital asset for which it could not determine a value, future farm subsidy payments. We reject the point.

■ Geujen finally contends that the circuit court erred in not specifically setting aside to him a gun collection which was his separate, nonmarital property. He argues that, because these guns were listed on both parties' statements of property, the circuit court erred in not setting aside this nonmarital property to him. He asks us to enter an order doing so. We decline.

Geujen does not provide this court with a record of the statements which the parties prepared before trial concerning their marital and nonmarital property. Further, we find no evidence relating to the status of the property or who had possession of the guns which would have permitted the circuit court to rule on their disposition. Geujen, therefore, fails to support his point with sufficient evidence permitting our review. His fourth point is denied.

In reversing the circuit court's determination that the $100,000 certificate of deposit and $3853 money market account were marital property and ordering that these items be set aside to Kinsey–Geujen as her separate, nonmarital property, the parties' shares of marital property are significantly altered. We, therefore, remand to the circuit court for its determination as to whether the percentage of marital property divided among the parties should be adjusted. *Mallams v. Mallams,* 861 S.W.2d 822, 824–25 (Mo.App.1993). In all other respects, we affirm the circuit court's judgment.

VICTOR C. HOWARD, Presiding Judge, and PATRICIA BRECKENRIDGE, Judge, concur.