Pamela S. COMNINELLIS,
Appellant–Respondent,

v.

George COMNINELLIS; and GNC Holdings, Respondent–
Appellants,

Olympic Industries and Impex International, Respondent.

Nos. WD 60774, WD 60828, WD 60844.

Missouri Court of Appeals,
Western District.

March 11, 2003.

Thomas E. Hankins, Gladstone, MO, for appellant-respondent.

John G. Dorsey, Claycomo, MO, for respondent.

James D. Boggs, Kansas City, MO, for respondent-appellant.

Before ROBERT G. ULRICH, P.J., EDWIN H. SMITH and PAUL M. SPINDEN, JJ.

ROBERT G. ULRICH, Judge.

**Factual and Procedural History**

George Comninellis (Husband) appeals the trial court's judgment dissolving his marriage to Pamela Comninellis (Wife) and distributing property. He claims that the trial court erred in (1) characterizing certain property as marital property, specifically the lot and foundation located at 612 N.W. 40th Terrace and the subsequent insurance proceeds paid by State Farm as a result of the house being destroyed by fire; (2) failing to set aside certain property as Husband's separate property, namely a commercial building and a Chris Craft yacht; and (3) awarding corporate assets of Husband's business to Husband as nonmarital property. The judgment of the trial court is affirmed in part, reversed in

part and remanded to the trial court with directions.

Husband and Wife were married on March 4, 1983. No children were born of the marriage. At the time of the marriage, Husband owned a printing business named Olympic Industries, Inc. It was later renamed GNC Holdings, Inc. Husband was the sole shareholder of the business. Wife worked as an airline stewardess for various airlines for most of the marriage. In March or April of 1983, Husband and Wife moved into a house located at 612 N.W. 40th Terrace. This house was purchased by and titled in the name of Olympic Industries, Inc. Olympic Industries, Inc. purchased a homeowner's insurance policy designating Husband as the insured. The house was destroyed by fire on December 29, 1999. State Farm issued a check payable to Husband for the loss of the house. Husband deposited the check into an account titled in his name. Later, Husband transferred the insurance proceeds into an account titled in the corporation's name. Husband sold the business name and assets in 1996. The corporation was administratively dissolved in 1999.

The couple separated on August 1, 2000, and Wife filed her petition for dissolution of marriage on December 5, 2000. In her petition, Wife requested maintenance. Wife filed an Amended Petition for Dissolution of Marriage on March 16, 2001, to join the corporation as a party to the proceeding. The trial court entered its decree of divorce and division of property on November 14, 2001. Husband filed an appeal on December 5, 2001. Both Wife and the corporation appealed on December 13, 2001. In its judgment of dissolution, the trial court first set aside Husband's separate nonmarital property consisting of corporate assets including corporate bank accounts totaling $184,347.34; a Lincoln Towncar titled in the corporation's name

valued at $5,000; and an apartment located in Limnos, Greece, valued at $15,000. Wife did not receive any separate property. The court then divided the marital property and debt. Wife was awarded the real property located at 612 N.W. 40th Terrace valued at $25,000; the fire insurance proceeds for the house totaling $223,000; bank accounts totaling $31,932.13; a Mercedes valued at $20,000; an American Airlines 401k plan worth $735.76; a $228,000 judgment against Husband; and she was ordered to pay $26,552 in debt plus her attorney's fees totaling $7,500. Husband was awarded the commercial property located at 1436 N. Burlington valued at $430,000; a yacht valued at $105,000; two cars valued at $5,675; bank accounts totaling $108,801.50; and he was ordered to pay $222 in debt plus his attorney's fees. The trial court denied Wife's claim for maintenance. This appeal by Husband and cross-appeal by Wife and the corporation followed.

### Standard of Review

The trial court judgment in a dissolution proceeding will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Childers v. Childers*, 26 S.W.3d 851, 853 (Mo. App. W.D.2000). A judgment will not be reversed unless it is against the weight of the evidence and then only with caution and a firm belief that the judgment is wrong. *Kennedy v. Kennedy*, 969 S.W.2d 310, 313 (Mo.App. W.D.1998). The "weight of the evidence" refers to the probative value of the evidence and not the quantity of the evidence. *In re Marriage of Lewis*, 808 S.W.2d 919, 922 (Mo.App. S.D.1991). The evidence in the record is reviewed in the light most favorable to the trial court's decision and all evidence con-

trary to the judgment is disregarded. *Evans v. Evans*, 45 S.W.3d 523, 526 (Mo.App. W.D.2001). The burden of demonstrating error is on the party challenging the divorce decree. *Childers*, 26 S.W.3d at 853.

The trial court has broad discretion in distributing property and an appellate court will interfere with the trial court's judgment only if the division is so unduly weighted in favor of one party as to constitute an abuse of discretion. *Miles v. Werle*, 977 S.W.2d 297, 301 (Mo.App. W.D. 1998). The trial court's decision regarding property division will not be reversed absent an abuse of discretion. *Cohen v. Cohen*, 73 S.W.3d 39, 53 (Mo.App. W.D.2002). An abuse of discretion occurs when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to indicate indifference and a lack of careful judicial consideration. *Id.* If reasonable persons can differ about the propriety of the trial court's action, it cannot be said that the trial court abused its discretion. *In re Marriage of Medlock*, 990 S.W.2d 186, 189 (Mo.App. S.D.1999).

### I. Husband's Appeal

### A. Family Home and Insurance Proceeds

In Husband's first point on appeal, he claims that the trial court erred in awarding certain property acquired during the marriage as Wife's marital property, specifically the remains of the house located at 612 N.W. 40th Terrace and the insurance proceeds paid from the house being destroyed by fire. Husband claims that the trial court erred in finding that the house was marital property because it was purchased by and titled in the name of the corporation. He argues that the house was nonmarital property even though it was purchased during the marriage. Hus-

band claims that he and Wife leased the house from the corporation for seventeen years. He contends that no evidence has been presented to justify piercing the corporate veil and treating the house as marital property. As to the insurance proceeds, Husband claims that the trial court erred in awarding the proceeds to Wife because the proceeds were treated as separate property by Husband and never commingled with marital property. Husband's final argument is that the trial court's characterization of the house and insurance proceeds as marital property directly conflicts with its finding that other property acquired by the corporation subsequent to the marriage is nonmarital property.

■■■ Property acquired during a marriage is presumed to be marital property. § 452.330.3, RSMo 2000; *Ansley v. Ansley*, 15 S.W.3d 28, 35 (Mo.App. W.D.2000). Husband, as the party claiming that the property is nonmarital property, bears the burden of proving the property is separate property by clear and convincing evidence. *King v. King*, 66 S.W.3d 28, 36 (Mo.App. W.D.2001). Under the source of funds doctrine, whether property is characterized as marital or nonmarital depends on the source of funds used to purchase the property. *McGilley v. McGilley*, 951 S.W.2d 632, 638–39 (Mo.App. W.D.1997) (citing *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 825 (Mo. banc 1984)). The doctrine requires courts to set aside a spouse's separate property in dissolution cases and property is deemed separate or marital based on the source of funds financing the purchase.

■■■ The trial court first found that the house, which was acquired during the marriage, was marital property. Husband claims that the house was nonmarital property not subject to division by the trial court because it was purchased by and titled in the name of the corporation. Wife contends that the property was acquired during the marriage with marital funds. The evidence showed that a check for the purchase price of the house was drawn on the corporation's business checking account. Husband testified that the funds in the corporation's checking account consisted of corporate profits earned before the marriage and funds he inherited from his father prior to the marriage. Husband's argument that the account contained profits from the business earned before the marriage is supported by the fact that Husband and Wife were only married a few weeks prior to the purchase of the house. A reasonable conclusion from this evidence is that Husband could not have earned enough money within the first 30–45 days of the marriage to pay for the house. As to Husband's argument that the account also contained funds acquired from an inheritance, Section 452.330.2(1), RSMo 2000, provides that property acquired by gift, bequest, devise, or descent is not marital property. That the house was nonmarital property is reinforced by the fact that the house was titled in the corporation's name. Although nonmarital property may lose its character as such if there is evidence of an intent to contribute the property to the community, no such evidence exists here. *True v. True*, 762 S.W.2d 489, 492 (Mo.App. W.D. 1988).

■■■ The trial court also set aside to Wife the insurance proceeds representing reimbursement for the destruction of the house by fire. Husband argues that the insurance proceeds are either his separate property or the property of the corporation. His second argument will be addressed below. In support of his argument that the proceeds constitute his separate property, Husband claims that he was designated as the payee on the insur-

ance proceeds check. Wife contends that Husband deposited the insurance proceeds into the parties' joint checking account. The evidence showed that Husband initially deposited the proceeds in a separate account titled in his name only and later transferred the insurance funds to an account titled in the corporation's name. The record supports Husband's contention that he never commingled the insurance proceeds with proceeds representing marital property. The insurance proceeds were improperly characterized as marital property by the trial court.

■■■ Husband's final contention is that the house and insurance proceeds belong to the corporation and as such were not divisible by the court. In a dissolution decree, a trial court may exercise control over property belonging to a corporation, even if one of the spouses is the sole shareholder of that corporation, as long as the corporation is a party to the litigation. *Penn v. Penn,* 655 S.W.2d 631, 632 (Mo. App. W.D.1983). A judgment or decree may only affect property belonging to parties to an action. *V.M. v. L.M.,* 526 S.W.2d 947, 952 (Mo.App. E.D.1975) (quoting 49 C.J.S. Judgment § 28 (1947)); *see also Nilges v. Nilges,* 610 S.W.2d 58, 61 (Mo.App. E.D.1980). Here, Wife filed an Amended Petition for Dissolution of Marriage in which she asked leave to join the corporation as an additional party. Husband mistakenly relies on a few cases for the proposition that a shareholder-even one who holds all the shares-does not have legal ownership of the corporation property. *Graves v. Graves,* 967 S.W.2d 632, 636 (Mo.App. W.D.1998). Title remains in the corporation. *Terry v. Reciprocal Exch.,* 268 S.W. 421, 424 (Mo.App.1925). The distinction between the cases cited by Husband and the instant case is that the corporation is a party to this action. The trial court had jurisdiction to consider the cor-

porate assets in its division of property because the corporation was a party to this action. Husband also argues that the trial court's judgment is inconsistent because its division of the house and insurance proceeds conflicts with its finding that other similarly titled and acquired property is owned by the corporation. The trial court determined that the corporation is "entirely [Husband's] non-marital property." The practical effect of this statement is to render all property belonging to the corporation as Husband's nonmarital property. Husband has sustained his burden of proving that the house and insurance proceeds were nonmarital property. The trial court's judgment is not supported by the weight of the evidence and must be reversed.

## B. Commercial Real Estate/Chris Craft Yacht

In Husband's second and third points on appeal, he claims that the trial court erred in finding that the commercial real estate located at 1436 N. Burlington and the Chris Craft Yacht were marital property. Husband argues that the trial court erred in finding the commercial real estate was marital property for two reasons. His first contention is that the property was not marital because it was acquired prior to the marriage and titled in his name. Husband's alternative contention is that the property was purchased over time by paying off industrial revenue bonds with funds from Husband's business and inheritance. As to the Chris Craft yacht, Husband claims that it was purchased with funds acquired from the sale of another yacht that took place prior to the marriage. Husband's final contention is that the trial court erred by including these two items in Husband's portion of the division of marital property and in not awarding it to him as separate nonmarital property.

As a rule, property acquired before marriage and titled in the purchaser's own name is nonmarital property. *Beckham v. Beckham*, 41 S.W.3d 908, 912 (Mo.App. W.D.2001) (citing *Kinsey–Geujen v. Geujen*, 984 S.W.2d 577, 579 (Mo. App. W.D.1999)). Adding a spouse's name to the title creates a presumption that the property has been transmuted into marital property. *Id.* The source of funds rule is used to determine whether property acquired after marriage is marital or nonmarital. *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 825 (Mo. banc 984). The character of property is determined by the source of funds used to finance the purchase of the property. *Id.* at 824. "Property is considered to be acquired as it is paid for, not when title passes." *Sanders v. Sanders*, 933 S.W.2d 898, 901 (Mo.App. E.D.1996) (citing *Moritz v. Moritz*, 844 S.W.2d 109, 112 (Mo.App. W.D.1992)). When applying the "source of funds" rule to determine whether acquired property is marital or nonmarital, the term "acquired" has been defined as "an on-going process of making payments for the acquired property." *Hoffmann*, 676 S.W.2d at 825. When property acquired prior to marriage is subject to a loan, the property becomes marital property to the extent marital funds are used to pay off the loan. *In re Marriage of Medlock*, 990 S.W.2d at 188 (citing *Mika v. Mika*, 728 S.W.2d 280, 282 (Mo.App. E.D.1987)) (rev'd on other grounds by *Cates v. Cates*, 819 S.W.2d 731, 736 (Mo. banc 1991)). "All property on which marital funds are expended is marital property regardless of the date of acquisition and status of title." *Marriage of Nored*, 971 S.W.2d 328, 331 (Mo.App. S.D. 1998) (quoting *Colborn v. Colborn*, 811 S.W.2d 831, 835 (Mo.App. S.D.1991)).

Husband purchased the commercial building in early 1982, prior to Husband and Wife's marriage. The evidence presented established that Husband began paying off the loan in equal monthly installments from early 1982 to 1987. Husband paid off the loan in 1987 with a check for $210,000.00. He received the title to the commercial building that same year. Husband and Wife dispute whether the commercial building was acquired during the marriage. Because application of the "source of funds" rule provides that property is acquired as it is paid for, the fact that Husband did not receive title until 1987 has little bearing on whether the commercial building is marital property. The dispositive issue is the source of funds used by Husband to pay for the building.

Husband claims that he paid for the building with funds from his inheritance. Wife counters that he purchased the building with marital funds. The record established that Husband paid for a portion of the building with marital funds. He testified as follows:

Q. And you made equal monthly payments from early 1982 through 1987?

A. Made equal monthly payments. But in 1987, the payment was different.

Q. Yes.

A. Because I paid off the loan. That's correct.

Q. Yes. And I will get to that, and I appreciate that clarification. But would you agree with me that until the payoff, which was in 1987, you, George Comnellis personally made equal monthly payments on the $292,000.00 purchase price from early 1982 until the time of the big payment in 1987?

A. That's correct.

Q. Okay. And in 1987, you paid $210,000.00 as a lump sum on the $292,000.00 purchase price from

Q. early 1982 until the time of big payment in 1987?

A. That's correct.

Q. And you cannot recall from which bank account that $210,000.00 came, can you?

A. Yes, I can.

Q. Okay. What bank account?

A. It came out of account # 410000279900.

\* \* \* \* \* \*

Q. And this is an account in which you now deposit your Social Security checks. Is that right?

A. That's correct.

Q. It's an account that during the course of your marriage you deposited your pay check (sic) from Olympic Industries. Is that right?

A. Some of it.

Q. Right.

A. Yes.

\* \* \* \* \* \*

▬▬▬ Q. And in 1987, you paid about, and I might be off a little bit, but about $200,000.00 didn't you?

A. A little over that.

Q. Okay. And that was a check that you wrote. Correct?

A. Yes.

Q. So that money we know could not have come from Greece. Correct?

A. Uh-huh.

Q. You didn't put the Greek money, the money that had its origin in Greece, into the bank. Correct?

A. I put an equal amount of money that I brought from Greece in rent money and payroll money into the account; so in essence, it was money that came from Greece. I did not put the exact handful of money in the bank, but I put the same amount that I brought in.

Q. Okay.

A. It was the same money.

Q. I understand your point. But let me make sure that the evidence is clear. The money that was in the bank account from which you wrote a check for $210,000.00 in 1987 as the final payment on the commercial property in North Kansas City was money that had been earned from either your income or from rent?

A. That was money that I brought from Greece. In addition to that, it was the $58,000.00 that Olympic Industries paid for the electrical installation.

Q. So you did put your Greek money [inheritance] in the bank?

A. I did not put the cash I brought in. I put an equal amount in checks that I received as rent and payroll from Olympic Industries.

Husband testified that the $210,000.00 payment was drawn on a checking account that contained his earnings. As a rule, "property acquired during the marriage, including income earned by a spouse, is presumed to be marital property subject to certain exceptions."[1] *King*, 66 S.W.3d at

---

1. The exceptions are outlined in section 452.330.2, RSMo 2000 which provides:

 For purposes of sections 452.300 to 452.415 only, "marital property" means all property acquired by either spouse subsequent to the marriage except:

 (1) Property acquired by gift, bequest, devise or descent;
 (2) Property acquired in exchange for property acquired by gift, bequest, devise, or descent;
 (3) Property acquired by a spouse after a decree of legal separation;

35 (citing § 452.330.3, RSMo 2000; *Taylor v. Taylor*, 25 S.W.3d 634, 643 (Mo.App. W.D.2000)); *see also* § 452.330.2, RSMo 2000. Husband's testimony also demonstrates that none of his inheritance money, the money from Greece, was deposited into that checking account. For that reason, the portion of the building that was paid for with the $210,000.00 check is marital property. Husband brought the commercial building into the marriage as separate property. Those payments that Husband made prior to the marriage are deemed Husband's nonmarital property. The record is unclear from which account the monthly payments were drawn from March 4, 1983, the date Husband and Wife married, to the date that Husband paid off the loan, sometime in 1987. The evidence shows that the funds used to pay that portion of the building is unlikely to have been Husband's cash inheritance as Husband testified that he did not deposit the inheritance money into the bank. Husband has failed to sustain his burden of proving that the commercial building is his separate nonmarital property. The record does not demonstrate that the source of funds used during the marriage to acquire the building was entirely Husband's separate nonmarital property. The case is remanded to the trial court to determine the parties' exact interest in the commercial property by determining the amount paid for the property by Husband before the marriage versus the amount paid for the property by Husband after the marriage commenced. The amount paid by Husband after the marriage commenced is deemed marital property.

Husband claims that the Chris Craft yacht is his separate property because it was purchased with funds from the sale of a yacht that occurred prior to the marriage. Property acquired subsequent to marriage in exchange for property acquired prior to marriage is not marital property. § 452.330.2(2), RSMo 2000; *McGilley*, 951 S.W.2d at 639. Although Husband purchased the yacht during the marriage, he did so with funds acquired from the sale of a yacht prior to the marriage. In the dissolution judgment, the trial court awarded the Chris Craft yacht to Husband without determining whether it was separate or marital property. Because the yacht was property acquired subsequent to marriage in exchange for separate property acquired prior to marriage, the yacht is Husband's separate nonmarital property.

Husband sustained his burden of proving that the yacht is his separate nonmarital property. The record demonstrates that the yacht is Husband's separate nonmarital property and not marital property. The trial court is directed to amend its judgment accordingly.

## C. Corporate Assets

In Husband's fourth point on appeal, he claims that the trial court erred in awarding certain corporate assets to him as nonmarital property, specifically two American Century accounts, a Lincoln Towncar, two Bank of America accounts and a Bank of America certificate of deposit. Husband contends that the trial court's judgment is inconsistent because it simultaneously found that certain corporate assets were Husband's nonmarital property as well as the corporation's property. He also argues that the trial court lacked jur-

(4) Property excluded by valid written agreement of the parties; and
(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless

marital assets including labor, have contributed to such increases and then only on the extent of such contributions.
None of these exceptions apply here.

isdiction to divide corporate assets that were not owned by either spouse.

In a dissolution decree, a court may not exercise control over property belonging to a corporation, even if one of the spouses is the sole shareholder of that corporation. *Graves,* 967 S.W.2d at 636. Courts in Missouri recognize an exception to this rule when the corporation is a party to the action. *Penn,* 655 S.W.2d at 632. Although the evidence in this case showed that Husband is the sole shareholder of the corporation, the corporation was also a party to the action. With respect to the corporate assets, the trial court made the following findings:

> The Court finds that GNC Holdings, Inc. (formerly Olympic Industries, Inc.) was formed by [Husband] in 1968, that no contribution of marital funds was made to it, and that said corporation is entirely [Husband's] nonmarital property. The Court further finds that the following are owned by GNC Holdings, Inc.:
>
> | | |
> |---|---|
> | American Century, account # 981–009069709 | $34,093.98 |
> | American Century, account # 982–009049757 | $35,213.40 |
> | Lincoln Towncar | $ 2,000.00 |
> | Portion of Bank of America CD # 091000040985152 | $50,986.12 |
> | Bank of America, savings account # 003474691628 | $53,448.19 |
> | Bank of America, checking account # 170180003439 | $10,605.65 |

■ As with the commercial real estate and yacht, the practical effect of the court's findings is to designate the corporate assets as Husband's nonmarital property. Because the corporation is a party to the action, the court did not err in considering the corporate interest in the assets claimed by one or both of the spouses. Husband's fourth point is denied.

## II. Wife's Appeal

### A. $50,986 Certificate of Deposit

■ In Wife's first point on appeal, she claims that the trial court erred in finding that a certain portion of Bank of America account 0900–0040–98–5152 was Husband's nonmarital property, specifically $50,986.12. She contends that the funds deposited in this account are marital property because the account was established during the marriage and the bank sent monthly statements for this account addressed to both Wife and Husband. Wife claims that the majority of the funds deposited into the account consisted of insurance proceeds paid by State Farm. Her final contention is that any of the funds that are not directly traceable to the insurance proceeds constitutes earnings from Husband's business and as such constitutes marital property.

■ Generally, property is considered nonmarital if a spouse owned it before the marriage and retained title to it after the marriage. *Beckham,* 41 S.W.3d at 912. Adding a spouse's name to the title creates a presumption that the property has been transmuted to marital property. *Id.* Only clear and convincing evidence that the owner did not intend to convert the property will rebut the presumption. *Pearson v. Pearson,* 22 S.W.3d 734, 738 (Mo.App. W.D.2000). The inclusion of both spouses' names on the title, however, is not the sole means of transmuting separate property into marital property. *Beckham,* 41 S.W.3d at 912. Where the parties continually commingle marital assets and earnings, and treat property as communal, separate property may be transmuted into marital property. *Cuda v. Cuda,* 906 S.W.2d 757, 759 (Mo.App. W.D.1995). The

deciding factor is the parties' intent. *Kinsey–Geujen,* 984 S.W.2d at 579.

The record on appeal establishes that Husband owned the corporation prior to the marriage. Husband testified that he sold the business name and assets in 1996. The proceeds from the sale of the business were deposited into three accounts, one of which was this account. As previously noted, property acquired subsequent to marriage in exchange for property acquired prior to marriage is not marital property. § 452.330.2(2), RSMo 2000. Husband testified that his intent was to keep the proceeds from the sale of the business separate by maintaining a separate account held solely in the corporation's name. Although Husband established this account during the marriage, the funds that were deposited into the account were not marital property. The monthly bank statements that were addressed to both Wife and Husband did not, moreover, contain information on this account.

Subsequent to opening the account, Husband transferred into the account the insurance proceeds paid to him by State Farm. As established under point one of Husband's appeal, the insurance proceeds were incorrectly characterized by the trial court as marital property. The insurance proceeds paid to Husband as beneficiary of the insurance policy due to the loss of the corporation's house by fire were Husband's nonmarital property. Wife's claim that this account contains marital property because Husband commingled the insurance proceeds with the proceeds of the sale of the business is moot. The record establishes that the funds existing in the account prior to the transfer of the insurance proceeds were from the sale of the corporation. The commingling of the insurance proceeds with the funds already existing in the account did not convert the existing funds into marital property. Husband testified, moreover, that it was his intent to keep the property separate. His intent is evinced by the fact that the account was never titled in Wife's name. The trial court was free to believe either party's testimony regarding the source of funds in this account and the court believed Husband's. *In re Marriage of Felkner,* 847 S.W.2d 144, 147 (Mo.App. S.D. 1993). The trial court, thus, did not err in designating $50,986 of the funds as Husband's nonmarital property. Point one of Wife's appeal is denied.

**B. $10,606 in Bank of America Checking Account 1701–8000–3439 and $53,448.19 in Bank of America CD 003474691628**

 In Wife's second point on appeal, she claims that the trial court erred in finding that Bank of America Account 1701–8000–3439 containing $10,606 and a Bank of America Certificate of Deposit 003474691628 worth $53,448.19 were Husband's nonmarital property. Wife claims that the funds in these accounts represent Husband's corporate earnings during the marriage. She argues that the funds in these accounts are marital property because Husband acquired the corporation during the marriage. Wife also contends that Husband titled these two accounts in the corporation's name to prevent Wife from receiving her share of marital assets. She urges the court to pierce the corporate veil and divide these assets.

Husband testified that the property in question consisted of proceeds from the sale of the corporation in 1996. The record reflects that these two accounts were titled solely in the corporation's name and that it was Husband's intent to keep the funds in these accounts separate. Husband testified that he attempted to sell the business in the late 1980s or early 1990s:

Q. In the late '80's or early 90's, you sold Olympic Industries to John Mallison. Is that right?

A. That's correct.

Q. And the purchase price for the sale was to go over fifteen years. Is that correct?

A. That's correct, yeah.

Q. And then the deal didn't go through, so he conveyed back to you everything in Olympic Industries?

A. Yes.

Husband testified that he started the business in 1968. Wife's argument that Husband's failed attempt to sell the business and the subsequent reconveyance of the business to him can be characterized as acquiring the business during the marriage is meritless. The trial court found that "GNC Holdings, Inc. (formerly Olympic Industries, Inc.) was formed by [Husband] in 1968, that no contribution of marital funds was made to it, and that said corporation is entirely [Husband's] non-marital property."

Wife's contention that Husband titled these two accounts in the business's name to prevent her from receiving her share of the marital assets is equally unavailing. The test for piercing the corporate veil is two pronged: first, the corporation must be controlled and influenced by persons or by another corporation; and second, the evidence must establish the corporate cloak was used as a subterfuge to defeat public convenience, justify a wrong or to perpetuate a fraud. *Thomas Berkeley Consulting Eng'r, Inc. v. Zerman*, 911 S.W.2d 692, 695–96 (Mo.App. E.D.1995). To support her argument, Wife relies on cases in which a court disregarded the corporate form on the basis of the alter ego or instrumentality rule. Under the alter ego or instrumentality rule, when a corporation is really indistinct from the person controlling it, then the corpo-

rate form may be disregarded if to retain it would result in injustice. *Schlingman v. Reed*, 750 S.W.2d 501, 504 (Mo.App. W.D. 1988). In the cases cited by Wife, the trial court made specific findings regarding why it found piercing the corporate veil necessary. In this case, the trial court made no such finding. *In re Marriage of Ward*, 659 S.W.2d 605, 608 (Mo.App. S.D.1983) (appellate court refused to pierce the corporate veil where trial court failed to make a specific finding that piercing the corporate veil was necessary); *Chen v. Li*, 986 S.W.2d 927, 934 (Mo.App. E.D.1999) (finding that the record did not support the conclusion to pierce the corporate veil). The record established that the funds in these two accounts were the proceeds from the sale of Husband's business. Wife has failed to establish that Husband titled these two accounts in the corporation's name to keep her from receiving her share of the marital assets. The trial court did not, therefore, err in designating these two accounts as Husband's nonmarital property. Wife has failed to sustain her burden in proving that these assets were marital property. Point 2 of Wife's claim is denied.

## C. Maintenance

In her third point on appeal, Wife claims that the trial court erred in denying her request for maintenance. This issue will not be addressed in light of this court's determination that an inexact portion of the commercial building is marital property, thereby altering the amount of assets to be provided to Wife, a likely consideration of the trial court when it determined whether maintenance would be awarded. Section 452.335.2, RSMo 2000 outlines the factors in determining the need for maintenance, including the marital property apportioned to the spouse seeking maintenance. A significant por-

tion of the commercial building is marital property. After determining Wife's exact interest in the commercial building on remand, the trial court shall consider whether an award of maintenance is appropriate. Therefore, because the denial of maintenance was premised on the trial court's division of marital property, the denial of maintenance is reversed so that the trial court may reconsider whether Wife should be awarded maintenance after dividing the marital property in accordance with this opinion. *Sturgis v. Sturgis,* 663 S.W.2d 375, 384 (Mo.App. E.D.1983); *Hauser v. Hauser,* 625 S.W.2d 924, 926 (Mo.App. E.D.1981).

### Conclusion

As discussed in Part I–A of this opinion, the portion of the trial court's judgment awarding real property at 612 N.W. 40th Terrace and the insurance proceeds to Wife as marital property was error and is reversed. The real property and the insurance proceeds are awarded to Husband as his separate nonmarital property. Various bank accounts totaling $108,801.50 were awarded to Husband. The judgment is unclear whether these accounts constitute marital or separate property. This portion of the judgment is reversed and the trial court is directed to divide those bank accounts constituting marital property equitably between the parties by taking into consideration each party's separate property. The portion of the judgment awarding Wife $228,000 is reversed to permit the trial court to consider whether such sum or a greater award is appropriate. The trial court is to make this determination by examining whether all, some or none of the various bank accounts totaling $108,801.50 constitute marital property and their appropriate division. The trial court is also to consider the division of separate property expressed in this opinion when considering division of the ac-

counts constituting marital property and when determining an appropriate monetary award to Wife. Additionally, to permit the trial court to make an equitable award, the denial of maintenance is reversed because the denial of maintenance was premised on the marital property award entered by the trial court. As discussed above, a significant portion of the commercial building is marital property, and the trial court will determine the exact interest of the parties in the commercial property by determining the amount paid for the property by Husband before the marriage versus the amount paid for the property after the marriage commenced. The amount paid after the marriage commenced, under the facts in the case, constitutes marital income used to purchase the real property. Because the division of property may vary from the judgment from which this appeal was taken, the trial court is also directed to reconsider the issue of maintenance. In all other respects, the judgment is affirmed.

All concur.