**Gail Ellen WINTER, Petitioner–Appellant,**

v.

**George Wayne WINTER, Respondent–Respondent.**

**No. 26267.**

Missouri Court of Appeals,
Southern District,
Division One.

July 13, 2005.

**242**

John J. Podleski, Crandall & Podleski, Carthage, for appellant.

Jerry L. Reynolds, Reynolds & Conway, P.C., Springfield, for respondent.

PHILLIP R. GARRISON, Presiding Judge.

Gail Ellen Winter ("Wife") appeals from a Judgment and Decree of Dissolution of Marriage entered by the circuit court of Jasper County. She contends that the trial court erred in characterizing certain property as non-marital, in dividing marital property, and in requiring her to provide health insurance benefits for George Wayne Winter ("Husband"). We affirm in part and reverse and remand in part.

Wife and Husband were married on October 14, 1972, and separated on July 27, 2001. Both children born of the marriage were emancipated at the time of the dissolution. During the marriage, Husband farmed land with his father until his father's death in 1993, after which time he farmed on his own. Wife worked as a high school teacher.

■ The standard of review in court-tried cases is well established. We will affirm the judgment of the trial court unless "there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).[1]

The first three points on appeal revolve around the trial court's characterization and division of four tracts[2] of real property and certain items of personal property. The fourth point deals with a health insurance policy which the trial court ordered Wife to maintain on Husband.

In Wife's first point, she claims that the trial court erred by determining that four parcels of real estate, aside from some

---

1. *Murphy* interpreted the provisions of Rule 73.01(c). The provisions of that rule now appear in *essentially the same form in Rule* 84.13(d), Missouri Rules of Civil Procedure (2004).

2. In lieu of providing the legal descriptions of the property, we will adopt the trial court's numbering of the tracts as tract 1, 2, 3, and 4.

marital contributions, were the non-marital property of Husband. Wife argues that tracts 1 and 2 were conveyed to her and Husband jointly during the marriage and are therefore presumptively marital. She also claims that tracts 3 and 4, previously titled in Husband's name alone, became marital because Husband conveyed them to him and Wife jointly, thereby transmuting them from non-marital to marital. She argues that these conveyances created a presumption, which Husband did not rebut, that the property became marital.

 The identification of property as marital or separate is in the broad discretion of the trial court. *Selby v. Selby*, 149 S.W.3d 472, 482 (Mo.App. W.D.2004). "When the characterization of property depends on an assessment of witness credibility, we will defer to the trial court's credibility determinations." *Id.* Section 452.330.2 [3] creates a presumption that all property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution is marital, regardless of whether title is held individually or jointly. Section 452.330.3; *Selby*, 149 S.W.3d at 483. This presumption can be overcome, however, by showing that the property was acquired by one of the exceptions listed in Section 452.330.2. Section 452.330.3; *Selby*, 149 S.W.3d at 483. The exceptions applicable to this case are "(1) Property acquired by gift, bequest, devise, or descent; [and] (2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent." Section 452.330.2. These exceptions must be proven by clear and convincing evidence. *Stidham v. Stidham*, 136 S.W.3d 74, 79 (Mo. App. W.D.2004).

We first address tracts 3 and 4, 120 acres in Barton County and 157 acres in Jasper County, respectively. Husband inherited these tracts in his name only when his father died. Approximately four years later, in 1997, Husband suffered a stroke and a severe infection which required his hospitalization for several weeks. Wife testified that while he was hospitalized, Husband wanted deeds prepared to put the land in both his and Wife's name so that if anything happened to him, Wife could avoid probate. To this end, Wife contacted J.D. Pahlow ("Pahlow"), a friend of Husband's and owner of a title insurance company. Pahlow came to the hospital and brought with him two deed forms, both of which listed Husband and Wife as grantees, and were signed by them in Pahlow's presence. One of the daughters of Husband and Wife videotaped the signing. The tape clearly shows that at least one of the deeds did not contain a legal description when signed. In fact, Pahlow admitted at trial that the deed intended for tract 4 contained no legal description when it was signed, and that it was added by him at a later time. While there was evidence that the deed for tract 3 was complete when signed, Wife was impeached with her deposition testimony that the legal description in it was also missing when signed. She also testified that, after signing blank forms Husband never delivered to her "another deed that was, in fact, signed, filled out, notarized, completed[.]"

Pahlow apparently maintained possession of the deeds for a period of time. He did not remember who picked up the deeds from him, though Wife testified that he called her and asked her to pick them up. She testified that she took the deeds home and asked Husband what he wanted to do with them and he told her to record the deeds. Wife recorded the deeds in

---

**3.** All statutory references are to RSMo (2000) unless otherwise indicated.

October and November of 2000. Husband testified at trial that he had no memory of signing any documents at the hospital, that he did not tell Wife to record the deeds, and that he did not receive the deeds from Pahlow. He learned later, during the course of the litigation, that the deeds had been recorded and he then recorded documents purporting to revoke the deeds.

■■■ There is uncontradicted evidence that Husband received ownership of tracts 3 and 4 through inheritance from his father. Property acquired by devise or descent is not marital property, even if acquired during the marriage. Section 452.330.2(1). Accordingly, these two tracts could only become marital property if Husband transmuted the property through the deeds while he was in the hospital.

■■■ When separate property is placed in the joint names of both spouses, a presumption is created that the property becomes marital and clear and convincing evidence is required to show that a gift was not intended. *Montgomery v. Montgomery*, 18 S.W.3d 121, 124 (Mo.App. S.D. 2000). Clear and convincing evidence " 'refers to evidence which instantly tilts the scales in the affirmative when weighed against the evidence in opposition, and the fact finder's mind is left with an abiding conviction that the evidence is true.' " *Id.* (quoting *In re Marriage of Jennings*, 910 S.W.2d 760, 763 (Mo.App. S.D.1995)). "The trial court may be clearly convinced of the affirmative of a proposition even though it has contrary evidence before it, and evidence in the record that might have supported a different conclusion does not necessarily demonstrate that the trial court's determination is against the weight of the evidence." *In re Marriage of Gilmore*, 943 S.W.2d 866, 870–71 (Mo.App.

S.D.1997). Self-serving testimony that a spouse did not intend a gift is entitled to little weight when that spouse caused separate property to be transferred to the spouses jointly. *Montgomery*, 18 S.W.3d at 124.

The trial court found that these tracts were the non-marital property of Husband because he inherited the land from his father. In its findings of fact regarding these parcels, the trial court found that Pahlow had been summoned to the hospital by Wife to prepare the deeds to these tracts in order to transfer title from Husband to Husband and Wife, and that the documents prepared by Pahlow consisted of one blank deed form and one deed form either partially or completely filled out; "[s]uch documents were taken by [Pahlow] and completed and notarized at a later time"[4]; and, "[t]here was no testimony that [Husband] delivered completely executed documents to anyone." *See Rhodes v. Hunt*, 913 S.W.2d 894, 900 (Mo.App. S.D.1995) (a deed must be delivered to be valid); *West v. Witschner*, 428 S.W.2d 538, 544 (Mo.1968) (a deed, delivered without a legal description and with no authority to fill out that description, is inoperative). The trial court obviously concluded that the deeds were not effective to convey these properties to Husband and Wife's joint names, and thus did not transmute these parcels from separate to marital property.

■■■ Appellate review is limited to those issues raised in the point relied on. *Lasker v. Johnson*, 123 S.W.3d 283, 289 (Mo.App. W.D.2003). In her point relied on, as it regards these tracts, Wife states,

The Trial Court erred in deciding that [tracts 1, 2, 3, and 4], which were jointly titled in the names of the parties as

4. Acknowledgement, except in limited circumstances, is not necessary for a deed to be valid between the parties. *Robb v. N.W. Elec. Power Coop.*, 297 S.W.2d 385, 389 (Mo.1957).

Husband and Wife at the time of trial were mostly the separate non-marital property of Husband because the law assumes a gift to the marital estate when a party transfers separate property into joint names. This was an abuse of discretion and against the weight of the evidence.... Deeds on [tracts 3 and 4] transferring title from Husband alone to Wife and Husband were recorded in 2000. Husband failed to show an exception to the presumed gift because he could not "trace" his alleged non-marital contribution to these jointly held properties.

In the argument section of her brief, Wife gives a recitation of the events occurring in the hospital and afterward. Her contention under this point starts with the assumption that the deeds were valid, and her only argument is that Husband did not rebut the presumption resulting when separate property is placed in the joint names of spouses. Her point relied on and the argument supporting it are devoid of any contention, or of citation to any authority, attacking the trial court's obvious conclusion that the deeds relied upon by Wife were ineffective to convey these tracts to the joint names of Husband and Wife. Without effective deeds, the presumption upon which Wife relies would not arise. The Appellant has the burden of demonstrating error. *Clance v. Clance*, 127 S.W.3d 716, 719 (Mo.App. W.D.2004). Wife did not bear this burden and this part of her first point is denied.

■ Tract 1 is a seventy-two-acre tract in Barton County which Husband and Wife bought in 1988. Wife testified at trial that she and Husband, along with another couple, purchased 160 acres of farmland and then immediately divided it into separate tracts of approximately eighty acres each. The deed conveying the eighty acre tract involved here was to "[Husband] and [Wife]." [5] The purchase price for Husband and Wife's portion of the 160 acres was $24,500. Husband testified that his father gave "us" $8,000 for the down-payment. At the time of the judgment, the mortgage on the property had been paid down to $13,000.

The trial court found that tract 1 was the non-marital property of Husband, subject to a marital interest. The trial court valued the tract at $42,000, and found that the marital interest in the tract was one-third of that amount, $14,000, which it divided equally between Husband and Wife. Thus, it appears that the trial court determined that the source of one-third of the tract was a gift from Husband's father (the $8,000 down payment of the $24,500 total) and approximately one-third of the value of the property was still owed on the mortgage on the property ($13,000), leaving one-third of the $42,000 value of the property as a marital investment ($14,000). It assigned the debt on the property to Husband, though it did not specifically assign the corresponding one-third value of this property in any of its schedules.[6] Wife does not challenge the valuation of the property at $42,000. She argues that this tract was originally acquired by them jointly and that Husband failed to satisfy his burden of proving that one of the exceptions to the presumption of marital property applied to it.

5. Husband and Wife earlier deeded an eight acre portion of the eighty acres to their daughter and her husband, resulting in tract 1 totaling seventy-two acres.

6. It appears that the trial court intended that tract 1, other than the marital contribution, be the non-marital property of Husband, as it stated in the judgment and decree. However, Schedule 4, the non-marital property of Husband, only includes one-third of the value of the land.

 Though Missouri courts follow the source of funds rule for determining whether property is marital or separate, this rule did not abolish the theory of transmutation. *McAllister v. McAllister*, 101 S.W.3d 287, 293 (Mo.App. E.D.2003). A strong presumption in favor of a gift to the marriage is created when property is jointly titled at acquisition. *Absher v. Absher*, 841 S.W.2d 293, 295 (Mo.App. E.D. 1992). Such is true even if one spouse furnished all of the consideration. *Stephens v. Stephens*, 842 S.W.2d 909, 914 (Mo.App. S.D.1992). In *Tracy v. Tracy*, 791 S.W.2d 924, 927 (Mo.App. S.D.1990), this court quoted with approval language from *Conrad v. Bowers*, 533 S.W.2d 614, 622 (Mo.App.St.L.1975), which stated,

> ... We believe, rather, that the general assembly intended that all property acquired subsequent to the marriage taken in joint names of husband and wife is marital property subject to division upon dissolution, unless (1) it is shown that the property acquired subsequent to the marriage was acquired in exchange for property acquired prior to the marriage *and* (2) it is shown by clear and convincing evidence that the transfer was not intended as a provision for a settlement upon or as a gift to the other spouse. (emphasis in original.)

It appears from this language that when property is jointly titled at purchase, as here, the party claiming that property as separate property must prove that it was acquired by one of the methods listed in Section 452.330.2 and that there was no intention of a gift to the other spouse. As this property was jointly titled in the names of Husband and Wife, a strong presumption was created that a gift to the marital estate was intended. *Absher*, 841 S.W.2d at 295.

Husband stated, "The down payment was given to us by my father to put on it."

He introduced no documents indicating that the money was actually given to him alone, although he later testified that his father helped him with the down payment. The trial court apparently believed that Husband's testimony showed that his father provided the $8,000 down payment on the property, and this made part of the property non-marital. There does not appear to us to be clear and convincing evidence that the $8,000 down payment, or any down payment that was made, was a gift from Husband's father to Husband only. Husband's own testimony describes the down-payment as "given to us." This testimony, in spite of the fact that he later stated that his father helped him alone with the down payment, does not make clear that the down payment was strictly a gift to him and not a gift to Husband and Wife. Furthermore, the debt of $13,000, secured by a deed of trust on this property, was in the names of both Husband and Wife. Husband also presented no evidence at trial to rebut the presumption of a gift to the marriage by titling the property in the names of both spouses. There was not clear and convincing evidence that the property was acquired by gift to Husband from his father or in exchange for property acquired by him by gift from his father. Nor was there clear and convincing evidence that a gift to the marital estate was not intended. Therefore, we find that the trial court erred in determining that only one-third of the value of tract 1 was marital. The character of the property in its entirety is marital.

 Tract 2 consists of forty acres and a residence in Barton County where Husband and Wife lived throughout the marriage. Husband's parents originally owned the property but allowed Husband and Wife to live there. Wife testified that Husband inherited a certificate of deposit worth $30,000 when his father died and

that the $30,000 was used to buy his mother, Glenna Winter, a house in Jasper, Missouri. She also testified that they put other money into that house beyond the money Husband inherited. The record shows a deed for a tract of land in Jasper County, Missouri, to Husband and Wife dated May 21, 1993. It also shows a contract between Glenna Winter, the sole owner of tract 2, and Husband and Wife, owners of the land in Jasper, where the latter land, valued at $30,000, was exchanged for tract 2, also valued at that time at $30,000. Husband and Wife also took title to tract 2 jointly.

Husband testified that he inherited the $30,000 CD from his father and that the money was used to buy his mother a house. He disputed Wife's claim that they put some of their own money into his mother's house. He also testified about improvements that were made to tract 2 during the time that Husband and Wife resided there, including the construction of several sheds, all but one of which was built by Husband's father. The farmhouse where Husband and Wife lived was also substantially improved through the labor of Husband and others.

The trial court determined that tract 2, which it valued at $75,000, was the separate property of Husband, subject to a marital investment of $10,000. It found that the source of funds for the property was the $30,000 CD Husband inherited from his father which was used to purchase the house in Jasper, Missouri for Husband's mother. It stated that, "Regardless of the fact the attorney who prepared the documents prepared the deeds in the name of [Wife] and [Husband], the source of funds for the purchase of the 40 acres and residence was the $30,000 Certificate of Deposit inherited by [Husband] from his father." It found that all of the sheds on this property, save one, were provided by Husband's father and that the residence was remodeled with funds from Husband's father and labor by Husband and others. It found that the marital interest in the property was $10,000.

Though there is clear evidence that the source of funds for the marital home was Husband's inheritance, Husband presented no evidence to rebut the presumption of a gift created when the property was acquired from his mother and titled jointly. In his brief he claims that the trial court could have found from the evidence that he had no intent to make a gift of the property, but he fails to point out which evidence substantiates his claim. Husband had the burden of proof in rebutting the presumption of a gift. *Schroeder v. Schroeder*, 924 S.W.2d 22, 28 (Mo.App. E.D.1996).

Husband also cites *Willyard v. Willyard*, 719 S.W.2d 91, 93 (Mo.App. E.D. 1986), for the proposition that the trial court could implicitly find that there was no intent on the part of Husband to make a gift. However, in that case there was evidence before the trial court that the husband did not intend to make a gift of the property and also an admission by the wife that she viewed the property as the husband's. *Id.* No such evidence of intent was present here. Furthermore, Wife testified that Husband never told her that the property was his separate property or was anything other than joint property. The trial court erred in finding that tract 2 was the separate property of Husband with a $10,000 marital interest. Rather, tract 2 should have been declared to be marital.

Wife's first point is granted as to tracts 1 and 2, but denied as regards tracts 3 and 4.

■ In Wife's second point, she claims that twenty brood cows, a 1982 7720 JD combine and head, a 400 Case tractor,

and a 970 tractor with loader were improperly characterized as Husband's non-marital property. She contends that these items should have been classified as marital property as all of them were acquired during the marriage and Husband failed to prove by clear and convincing evidence that those items were his separate property.

Husband argues that the evidence established that he obtained these items either through gift or inheritance from his father. He cites *D.K.H. v. L.R.G.*, 102 S.W.3d 93 (Mo.App. W.D.2003), in support of his contention that the trial court could determine that the property discussed in this point was separate property. There, the trial court determined that certain property was the non-marital property of the wife. *Id.* at 97. The wife testified at trial that she purchased property with funds she inherited, and that she and her husband together had not saved enough money to cover the purchase of the property at that point in their marriage. *Id.* at 97–98. Wife's testimony also included, however, her statement that she "presumed" the funds for the purchase came from inherited funds but could not say so "for certain." *Id.* at 98. She could also not produce documents to support her testimony. *Id.* The appellate court deferred "to the trial court's decision to accept [the wife's] testimony that she used her inheritance to purchase [the property]." *Id.* In doing so, however, it also found that there was other evidence to support her claim, namely that, although the husband was primarily responsible for financial matters during the marriage, he had no recollection of whether they had saved enough money from his earnings to purchase the property, and that he was not involved in its

purchase and thought it was not a good idea. *Id.* The court also noted that the property was not jointly titled, that it did not find the husband's argument regarding spending and payment of taxes from the inherited funds convincing, and it found clear and convincing evidence that the property was purchased using inherited funds and was separate property. *Id.* at 98–99.

Here, the trial court found the twenty brood cows, as well as the JD combine and head, came to Husband by gift or inheritance from his father; and that he inherited the 400 Case tractor and 970 tractor with loader. It valued the brood cows at $7,000, the combine and head at $14,000, the 400 Case tractor and loader at $1,000, and the 970 tractor w/loader at $3,000.

As to the twenty brood cows, there is sufficient evidence to support the trial court's determination. Husband testified that he inherited the twenty brood cattle when his father died and that those cattle were old and "in the upper 20's" at the time of trial. Wife agreed that he inherited cattle.[7] The trial court did not err in finding that these cows were Husband's separate property.

Regarding the 400 Case tractor, Husband testified that he inherited it from his father. Wife stated that this tractor was Husband's father's and "became ours with the transferring of the estate." She believed it was covered by a bill of sale from Husband's father to "[her] and [her] husband." In 1982 and as part of his estate planning documents, Husband's father executed a bill of sale. The bill of sale did not, as Wife appears to claim in her testimony, purport to transfer items to Hus-

---

7. There is no issue raised in this appeal about whether the twenty brood cows referred to in the judgment are the same twenty brood cows that Husband inherited or received by gift from his father. We note that other cattle were found to be marital property and divided by the trial court. Wife raises no issue with regard to the marital cattle.

band and Wife, but rather it did so to Husband alone. However, the bill of sale clearly states that Husband's father

for and in consideration of the sum of * * *Ten Dollars and Other Valuable Consideration* * * ... the receipt of which is hereby acknowledged, by these presents does bargain and sell unto the said [Husband] ... All farm machinery and equipment, per itemized list attached, together with all shop tools, located on the premises of Grantor's farm located North and East of Jasper, Missouri.

The Case 400 tractor is included on the itemized list. There was no testimony at trial regarding whether the bill of sale was effective upon Husband's father's death or at the time of execution, so we can only assume that it was effective at the time of execution. In either event, it would have been effective during the marriage.

The trial court stated, in its decree, that "[Husband] received his father's farm equipment ... through gift or inheritance by way of Bill of Sale delivered to [Husband] before his father's death or gift from [Husband's father] to [Husband]." It found that he inherited the 400 Case tractor from his father. Husband gave only conclusional testimony that he inherited the tractor. Conclusional statements offered to prove the character of property have been found not to constitute clear and convincing evidence to rebut the presumption of marital property. *In re Marriage of Reed*, 762 S.W.2d 78, 83 (Mo.App. S.D. 1988). Furthermore, the bill of sale shows that it, and other items not at issue in this appeal, were purchased from Husband's father for "Ten Dollars and Other Valuable Consideration." No testimony was presented regarding the character of the funds or other consideration used to complete this purchase. Husband had the

burden of overcoming the presumption that property acquired subsequent to marriage is marital by clear and convincing evidence. In light of the bill of sale, we find that he did not carry this burden as regards the 400 Case tractor. This tractor was improperly characterized as Husband's non-marital property. We accept its value at $1,000 as determined by the trial court.

Regarding the 970 tractor with loader, Husband listed it as his separate property on his amended form DR–1 and valued it at $3,000. Wife testified that she and Husband bought this tractor, and that it was worth $4,000. However, her testimony shows some confusion on her part as to which tractor this is, as there were three different tractors. Husband, in his testimony, did not specifically refer to the 970 tractor with loader, though he gave testimony regarding a 2094 Case tractor, which he admitted was marital and is not at issue in this appeal, and the 400 Case tractor. The 970 tractor with loader is referred to in two of the documents received in evidence, Husband's amended form DR–1 and Husband's "Exceptions to DR–1 Form Filed by [Wife] Regarding Existence or Character of Property." In the exceptions it states, "970 Case tractor & loader; [Husband's] non marital from George [8] less trade."

The trial court must have found that Husband inherited the 970 tractor based on this statement in his exceptions to Wife's DR–1. Husband gave no testimony at trial from which the trial court could have reached the conclusion that Husband inherited this tractor. The statement in Husband's exception to Wife's DR–1 does not constitute clear and convincing evidence that the 970 tractor was non-marital. It does not state that the Husband inherit-

---

8. This is presumably Husband's father.

ed it, nor does it state that it was a gift from Husband's father. The phrase "[Husband's] non marital from George less trade" could also imply that Husband purchased it from his father. We find that the trial court erred in determining that this tractor was Husband's separate property. Wife has not contested the trial court's valuation of this tractor on appeal, so we accept that its value is $3,000.

The final piece of property at issue under Wife's second point is the 1982 JD 7720 combine and head ("combine"). The trial court found that Husband's father purchased the combine and made the payments until his death. The only evidence as to the manner of acquisition of the combine was testimony by the parties. Wife testified that the combine was purchased during the marriage, in 1985, by she and Husband, and she believed that a promissory note for it was executed to a bank or other lending institution. No such note was made a part of this record, however. Husband testified as follows regarding the combine:

Q. Okay. Do you claim—Do you claim all or any part of that as non-marital property?

A. My father helped me with the down payment, and when he died and we sold his house, I paid it off with his money too. It come [sic] from the house sale.

Q. How much—How much of the—

A. Would be 100 percent.

Q. So actually the—the—

A. And it was used in his and my farming operation too.

Q. Okay. So your—your father paid the down payment, and then it's paid off with your inheritance from your father?

A. Uh-huh.

He did not have any documentary evidence to support his testimony, however.

From this testimony, the trial court could have concluded that Husband's father provided the down payment on the combine, and that it was paid off with proceeds from Husband's inheritance from his father. This testimony is not clear as to what the "100 percent" referred to by Husband represents. In context it appears to refer to the balance remaining on the note for the combine at the time that the proceeds were used to pay it off. However, Wife's testimony establishes that the combine was acquired in 1985, and Husband's father died in 1993. Wife's testimony indicates that she and Husband executed a promissory note on the combine, and, we presume, made the payments on the combine during the approximately eight years prior to the death of Husband's father. We find that Husband has not presented clear and convincing evidence that the entire value of the combine is non-marital property. We remand to the trial court for it to determine the marital and non-marital portions of the combine, valued at $14,000.

Wife's second point is denied as to the twenty brood cattle, but granted as to the 400 Case tractor, the 970 tractor with loader, and 7720 JD Combine and head.

In her third point, Appellant challenges the division of marital property. The division of the property is inequitable, according to her, because the property referred to in points one and two should have been classified as marital instead of non-marital. She argues that by reason of these errors in classification, Husband received the vast majority of the marital property.

Section 452.330.1 provides that the trial court shall set aside to each spouse his or her non-marital property and then

"divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors...." It is not necessary that this division be equal, but only fair and equitable under the circumstances. *Bohon v. Bohon,* 102 S.W.3d 107, 109–10 (Mo.App. W.D.2003).

The trial court awarded marital property to Wife valued at $57,106.32 and marital debts totaling $10,797.67, leaving wife with a net value of marital property of $46,308.65. It awarded Husband marital property valued at $69,265 and debts of $19,100, leaving a net value of $50,165. Further, the trial court ordered an equalization payment from Husband to Wife of $21,905 in order to balance the distribution of marital property. The equalization payment added to Wife's net value gives an amount of $68,213.65 and subtracted from Husband's gives an amount of $28,260. Wife did not challenge the trial court's valuation of any of the property on appeal, therefore we will accept the trial court's valuations.

The trial court set aside non-marital property of Wife valued between $289,616 and $476,273. The bulk of this non-marital property, and the reason why its value was not determined more exactly, is that Wife has a retirement account through the Public School Retirement System of Missouri valued at between $285,891 and $472,548. As this value determination was not challenged, we accept the value of this account as determined by the trial court. The trial court set aside non-marital property of Husband valued at $381,899.[9]

We have determined that the trial court erred in finding that there was a marital interest in tract 1 of only one-third ($14,000) of its $42,000 value, and have determined that it is entirely marital in character. We also determined that tract 2, valued at $75,000, the 970 tractor with loader, valued at $3,000, and the 400 Case tractor, valued at $1,000, were improperly characterized as Husband's non-marital property. We have also determined that at least some portion of the value of the 1982 7720 JD combine and head is marital. This mischaracterized property has a total value of $121,000, not including some portion of the $14,000 value of the combine. We remand to the trial court for it to consider a just and equitable division of the marital property in light of our determinations and the factors contained in Section 452.330.1.

■ In her final point, Wife claims the trial court erred in ordering her to maintain health insurance for Husband through her employer because it was without authority to do so, especially since maintenance was not awarded to Husband. She claims that Federal COBRA law only allows for Husband's coverage to be maintained for three years following dissolution.

Wife appears to be arguing that Husband should only be allowed to maintain health insurance through Wife's employer for three years, and not indefinitely. She cites *Rich v. Rich,* 871 S.W.2d 618 (Mo. App. E.D.1994), in support of her contention that the trial court cannot order health insurance to be continued without an award of maintenance. There, the trial

9. The total value of the non-marital property set aside to Husband in Schedule 4 of the judgment incorrectly reflected the apparent findings of the trial court in that it only accounts for $14,000 of value in tract 1. The judgment and decree, however, awards Husband all of tract 1, subject to a marital investment of $14,000. Thus, based on that finding, the value of the non-marital portion of that land set aside to Husband would have been $28,000, resulting in a total value of $381,899.

court ordered the husband to maintain health insurance for the wife as a limited form of maintenance through the COBRA program. *Id.* at 622. The wife complained of the termination of the insurance after three years and the court of appeals found no error as the COBRA law provides that the husband may maintain the coverage for up to three years. *Id.* at 624.

Husband contends that the parties explicitly agreed that Wife would maintain Husband through her insurance so long as he paid the premium to her in advance of its being due. He cites *Mason v. Mason,* 873 S.W.2d 631, 634 (Mo.App. E.D.1994), for the proposition that the trial court can order one party to maintain health insurance for another party despite a waiver of maintenance where there is an explicit agreement to provide insurance for the other party. Husband also argues that the COBRA law is not applicable because the parties followed the procedure required by the insurer to maintain Husband on Wife's insurance "without going on CO-BRA."

During the trial, both parties gave testimony with regard to health insurance. Wife had maintained Husband on her health insurance, though he had been paying the premium. Wife testified that it was fine with her if the trial court ordered that health insurance be kept in place if Husband paid the premium. She also testified that it was important that Husband maintain health insurance because of his history of diabetes and stroke. Husband stated that he needed to maintain insurance through Wife and asked the court to specifically order that it be continued at his expense. A discussion was then held by the attorneys and the court.

> THE COURT: Could I inquire on that? Is that a type of COBRA extension, or is that peculiar to the retirement system and their insurance provisions?

> MR. PODLESKI [Wife's attorney]: I'm assuming it's a COBRA, Judge. I don't know anything about the—

> THE COURT: Mr. Reynolds [Husband's attorney]?

> MR. REYNOLDS: I contacted the general counsel's office and there's some confusion over the information, but I've—At one time we were told that he would continue on the policy uninterrupted, and then there—then there was later a question as to whether that would be a COBRA after the dissolution case was actually entered. So to be honest with the Court, it's really unknown, but at least I know—they told me to request the policy continue by court order, and it's my belief that the policy will continue by court order and not even be on COBRA. COBRA only lasts about a year and a half.

> MR. PODLESKI: It's three years on a divorce.

> MR. REYNOLDS: And—And three years. But if—And sometimes there's more—The premium can change on a COBRA substantially. So it—it's certainly preferable if we can continue the existing policy by court order. It would be much preferable to just relying on COBRA.

> THE COURT: Any edification on that?

> MR. PODLESKI: No, Judge. The only thing that I would ask, and I think my client says yes, that she didn't have any problem with that. She—[Husband] has been reimbursing her. She'd been paying the premium initially, or—are they deducted from your check?

> [Wife]: Deducted.

> MR. PODLESKI: They're deducted. If the Court was going to enter such an order, we would want it very clear that she wasn't a loan company for him and she wasn't to carry him, and if he

didn't—if he fell as much as 30 days behind, and that wasn't to be encouraged, but if he didn't—you know, for example, if he was 15 days behind, her obligation was—was ended and the insurance could be terminated.

MR. REYNOLDS: We would—We don't want her to be a loan. We would even agree to pay it in advance.

THE COURT: Okay. Thank you.

MR. PODLESKI: That's—That would probably be a great way to do it, Judge. If it's not paid in advance, then she can cancel it.

In its judgment and decree, the trial court found that Husband had no other source of insurance coverage except through the continuation of the current policy through Wife's employer. It ordered that the policy should continue in full force and effect "for as long as [Wife] may legally retain such policy of insurance." It also ordered Husband to pay all premiums to Wife in advance of the due dates. We note that, although Wife complains of this portion of the judgment on appeal, it appears to us that she agreed to maintain Husband on the policy so long as he paid the premiums in advance, without limiting the length of time during which she would accept such an arrangement. An appellant cannot take a position on appeal contrary to the position taken at trial. *Bland v. IMCO Recycling, Inc.*, 67 S.W.3d 673, 682 (Mo. App. S.D.2002).

Wife is correct in noting that COBRA coverage can extend for a maximum of three years from the date of dissolution. 42 U.S.C.A. § 300bb–2(2)(A)(iii); 42 U.S.C.A. § 300bb–3(3) (2003). The trial court's order only states that Wife shall maintain the policy for as long as she may legally retain the policy. It appears, then,

that if Husband is to receive his health insurance through COBRA, then the judgment and decree only obligate Wife to maintain him on the policy for three years, as this is the length of time prescribed by law. However, if Wife is to maintain Husband through some other arrangement through her insurer, and not under CO-BRA, then she is obligated to maintain that policy indefinitely.[10]

In *Mason*, the trial court ordered the husband to pay the insurance premiums for the wife. 873 S.W.2d at 634. The appellate court found that even though insurance is a form of maintenance and that the parties had waived maintenance, the parties' agreement "set insurance apart from other forms of maintenance." *Id.* In *Rich*, the trial court ordered the husband to maintain wife's status as a covered dependent on his medical insurance through the COBRA program as a form of limited maintenance. 871 S.W.2d at 622. By law, this coverage would terminate after three years. *Id.* at 624. That case does not state whether the husband paid the premiums or whether the wife forwarded the premiums to the husband. However, here Husband pays his own premiums for insurance coverage, in advance, to Wife. This does not appear to us to be a form of maintenance, but a method for maintaining health insurance on an individual who could be uninsurable otherwise. There is no evidence that Wife bears a financial burden by carrying Husband on her insurance where he pays the premium. As Wife agreed to the arrangement contained in the judgment and decree, whether it be through COBRA or another arrangement with her insurer, we deny her fourth point.

**10.** No issue was raised on this appeal concerning uncertainty of the decree in this regard.

The judgment and decree is reversed as to the classification as marital or non-marital of the property discussed in this opinion, as well as the division of marital property. The case is remanded to the trial court for further proceedings as to those issues, consistent with this opinion. The judgment and decree is affirmed in all other respects.[11]

PREWITT and RAHMEYER, JJ., concur.

---

**11.** Husband's motion to dismiss the appeal is denied.