**Rosanne THOMAS, Respondent,**

v.

**Tom K. THOMAS, Appellant.**

**No. WD 64772.**

Missouri Court of Appeals,
Western District.

Dec. 27, 2005.

James D. Boggs, Kansas City, MO, for appellant.

Dennis J. Campbell Owens, Kansas City, MO, for respondent.

Before: HAROLD L. LOWENSTEIN, P.J., JOSEPH M. ELLIS, and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

Mr. Tom K. Thomas appeals the trial court's dissolution judgment as it relates to the division of property. He specifically asserts that the trial court mischaracterized some of the property and divided the property in an inequitable manner.

### FACTUAL AND PROCEDURAL BACKGROUND

Prior to marriage, Ms. Rosanne Thomas and Mr. Tom Thomas signed an antenuptial agreement (agreement). Ms. Thomas worked before marriage but quit to become a full-time homemaker after their two children were born. She returned to work in 1993 as a school bus driver, which allowed her to continue performing household duties and be available for the children. She has worked for the same company for eleven years but does not have a retirement plan. She earns about $15,000

annually. Ms. Thomas has deposited two-thirds of her paycheck into Farley State Bank joint-checking account that she maintains, and routinely has given the remaining one-third in cash to Mr. Thomas. Mr. Thomas has worked at his current employment since 1969. He has accumulated three employment benefits for his service: profit-sharing plan, thrift plan, and cash-balance-retirement plan. Both the profit-sharing and thrift plans were listed as separate property in the agreement. Mr. Thomas earns about $40,000 annually. Mr. Thomas has deposited his income in his Union Bank money market savings (savings)[1] and joint-checking accounts during the marriage.

The couple separated and Ms. Thomas moved out of the marital home leaving Mr. Thomas and her children. Ms. Thomas filed for divorce on June 10, 2002. At trial, she requested maintenance for five years and a fair and equitable division of all marital property. Mr. Thomas, in his answer and counter petition, requested that the property classification be consistent with the antenuptial agreement entered into between him and Ms. Thomas.[2] Ms. Thomas also filed a motion to set aside the antenuptial agreement on the grounds that it was invalid and unconscionable. The trial court found the agreement to be valid and not unconscionable. It further found all employment benefits accrued during marriage to be marital property. In the dissolution decree, the trial court found the Union Bank accounts to be marital property and awarded a majority of the marital property including Mr. Thomas's employment benefits to Ms. Thomas. Mr. Thomas appeals the judgment.

## STANDARD OF REVIEW

This court reviews dissolution of marriage actions under the *Murphy* standard. *Selby v. Selby*, 149 S.W.3d 472, 482 (Mo.App. W.D.2004). Therefore, we will affirm unless we conclude that the trial court's judgment is not supported by substantial evidence, is against the weight of the evidence, or erroneously applies or declares the law. *Adair v. Adair*, 124 S.W.3d 34, 38 (Mo.App. W.D.2004). In addition, we can reverse the decision if the division of property is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. *Woodson v. Woodson*, 92 S.W.3d 780, 785 (Mo. banc 2003) (citation omitted). Abuse of discretion occurs when the judgment is "so arbitrary or unreasonable that it indicates indifference and lack of proper judicial consideration." *Id.* "We view the evidence and reasonable inferences therefrom in the light most favorable to the decree and disregard all evidence to the contrary." *Selby*, 149 S.W.3d at 482.

1. We are unable to determine if the Union Bank savings account, in dispute here, is the same as the Union National Bank listed in the agreement.

2. The relevant provisions of the Antenuptial Agreement are as follows:
 3. All of the property ... listed on the schedules attached hereto shall hereafter remain the sole and separate property of the person now owning said property or an expectancy in such property, during their lifetime unless and until specific instruments are executed conveying an interest in property to the other party.

. . . .

6. The establishment of joint checking account or accounts for purposes of paying living expenses and utilities, or any other item, shall not constitute a gift by each party to the other, but ownership shall remain of the separate funds in proportion to the amounts deposited.

. . . .

8. The earnings that either party shall have from their employment or investments during the course of this marriage shall be that person's sole and separate property.

## LEGAL ANALYSIS

### Characterization of Property

■ Mr. Thomas contends that the trial court erred in characterizing certain property as marital after a finding that the antenuptial agreement between Mr. Thomas and Ms. Thomas was valid. The trial court found that the Union Bank accounts and the increased value of his employment benefits that accrued during the marriage were marital property. Mr. Thomas claims that the antenuptial agreement designated those items as his sole and separate property. "The construction of contracts is a question of law. This court reviews declarations of law *de novo.*" *McGilley v. McGilley,* 951 S.W.2d 632, 636 (Mo.App. W.D.1997) (citation omitted).

■ Section 452.330.2,[3] defines marital property as all property acquired by either spouse during the marriage with five exceptions that rebut this presumption. The two exceptions that apply here are "[p]roperty excluded by valid written agreement of the parties" and "[t]he increase in value of property acquired prior to marriage or pursuant to subdivisions (1) to (4) of this subsection." *Id.* In this case, the written agreement is an antenuptial agreement, which is unique and must be strictly construed. *McGilley,* 951 S.W.2d at 637 (citation omitted). Antenuptial agreements are valid in Missouri and will be enforced on their terms. *Id.* A trial court cannot select which terms to enforce once it decides that the agreement is valid. *Kester v. Kester,* 108 S.W.3d 213, 224 (Mo. App. S.D.2003). The issue is whether the terms of the agreement characterize the Union Bank savings and joint-checking accounts and the increased value of the employment benefits as separate property.

■ First, the characterization of the appreciation of the profit-sharing and thrift plans listed in the agreement and the cash-balance-retirement plan as marital property is an erroneous declaration of the law. The increased value of separate property, absent a written agreement, is marital but only to the extent the increase is due to marital contribution including labor. The trial court implicitly found that the agreement failed to address the classification of the increase in separate property, and that the increase of the employment benefits was due to marital contributions.[4] Ms. Thomas argues that the trial court did not err in its characterization because the agreement does not state that an increase in or appreciation of separate property belongs sole the owning party's property. According to Ms. Thomas's reasoning, a strict construction of the agreement requires inclusion of the words "increase" or "appreciation" before the court can find that the agreement excludes the increased value of separate property from marital property. The construction of a contract is the legal effect given to the agreement between the two parties. *Phipps v. Sch. Dist. of Kansas City,* 645 S.W.2d 91, 101 (Mo.App. W.D.1982) (stating that the interpretation of contract terms is distinct from the construction of a contract). It follows that the agreement be given conservative application to rebut the statutory presumptions set forth in section 452.330. Therefore, issues that are not expressly addressed in the agreement are decided according to section 452.330. Examples of strict construction include: *King v. King,* 66 S.W.3d 28, 35 (Mo.App. W.D.2001) ("Absent express language, the antenuptial agreement did not

---

3. All statutory references are to RSMo 2000 unless otherwise indicated.

4. The trial court characterized the contributions made to the retirement benefits during the marriage as marital property.

exclude from marital property income earned by Husband and Wife during marriage."); *McGilley,* 951 S.W.2d at 638 ("[T]he agreement contains no provision relating to the distribution of marital property ... Therefore, ... trial court must identify and divide all marital property in a fair and equitable manner...."); *Hawley by Cordell v. Hawley,* 904 S.W.2d 584, 586 (Mo.App. W.D.1995) ("[W]e do not need to reach this issue because the [agreement] in this case does not expressly waive the maintenance sought...."). Before the strict construction of an agreement, the trial court must determine the meaning of the agreement applying ordinary contract principles. *McGilley,* 951 S.W.2d at 637 (holding that it is the court's duty to determine the meaning and purpose employing the ordinary contract principles in its determination before a strict construction of the agreement).

In this case, a strict construction of the agreement compels that the classification of the appreciation of those listed assets and the cash-balance-retirement plan be separate property. Paragraph three of the agreement states that all property listed on the schedule remains "the sole and separate property of the person now owning said property or an expectancy in such property." While there are no phrases "increased value of separate property" or "appreciation of separate property" in the agreement, the agreement does expressly address this issue with the phrase "expectancy in such property." Neither the parties nor the trial court have defined "expectancy." The Missouri Supreme Court defines expectancy as "that which is expected or hoped for." *Bell v. May Dep't Stores Co.,* 6 S.W.3d 871, 876 (Mo. banc 1999). The future growth of pension plans and retirement savings is that which is expected and hoped for in such property. The trial court should have defined the meaning of "expectancy" as used in the

agreement to include the increased value, *McGilley,* 951 S.W.2d at 637, and should have subsequently excluded the increased value in all listed separate property from marital property. Accordingly, the trial court erred when it construed that the agreement did not preclude it from finding that the increased value of the employment benefits was marital property subject to division because paragraph three in the agreement expressly identifies such property as separate.

Second, the characterization of the Union Bank accounts as marital property is an erroneous declaration and application of the law. The trial court stated that these accounts were marital taking into consideration the source of funds. As a general rule, property acquired after marriage is presumed marital. § 452.330.3. "Property is ... acquired as it is paid for...." *Comninellis v. Comninellis,* 99 S.W.3d 502, 509 (Mo.App. W.D.2003); *Hoffmann v. Hoffmann,* 676 S.W.2d 817, 824 (Mo. banc 1984). This presumption can be overcome by showing that the property was acquired by one of the exceptions listed in section 452.330.2. Applying the source of funds rule to this case, the funds in the savings account are non-marital property. Source of funds rule states that property is marital to the extent the source of funds used to acquire it is marital. *McGilley,* 951 S.W.2d at 638–39. The trial court found the savings account to consist of Mr. Thomas's inheritance and his income. Property acquisition by inheritance is one of those exceptions. § 452.330.2(1). Property excluded by a valid written agreement of the parties is also an exception. *Id.* at .2(4). Income is marital property unless there is a valid written agreement. *Id.* The antenuptial agreement here, in paragraph eight, provided that the earnings from employment remain that party's sole and separate

property. As a result, the income earned by each party was no longer marital property. Consequently, marital funds were not used to acquire the savings in the account. Therefore, the trial court erred when it characterized such property as marital.

■■■ Regarding the joint-checking account for household expenses established after the marriage, the evidence shows that the checking account consisted solely of Mr. Thomas's paycheck. As determined earlier, his income is non-marital property. According to the source-of-funds rule, because this is the only source for the checking account, the joint-checking account is also non-marital property. *Comninellis,* 99 S.W.3d at 513. Furthermore, Mr. Thomas's income by virtue of being placed in a joint-checking account was not transmuted to marital property. Placing property in joint names of both spouses creates a presumption of a marital gift and can only be overcome with clear and convincing evidence. *Winter v. Winter,* 167 S.W.3d 239, 244 (Mo.App. S.D.2005) (citation omitted). Clear and convincing evidence "instantly tilts the scales in the affirmative when weighed against the evidence in opposition, and the fact finder's mind is left with an abiding conviction that the evidence is true." *Id.* Here, the clear and convincing evidence that Mr. Thomas's earnings in the checking account were not a marital gift is the antenuptial agreement. According to paragraph six of the agreement, the joint-checking account was established "for purposes of paying living expenses and utilities, or any other item," but funds deposited therein remained separate property and did not constitute a gift to the other spouse. Absent some use of those funds contrary to the agreement, paragraph six of the agreement is clear and convincing evidence that there was no marital gift. *Klockow v. Klockow,* 979 S.W.2d 482, 488 (Mo.App. W.D.1998) (finding separate property designated in the antenuptial agreement was transmuted because Mr. Klockow failed to follow the agreement terms segregating his personal assets from business assets). In conclusion, the trial court erroneously applied the law when it ruled that the characterization of the employment benefits and the Union Bank accounts were marital property. Mischaracterization of property does not require reversal unless the resulting division of the property is an abuse of discretion. *Greiner v. Greiner,* 146 S.W.3d 442, 446–47 (Mo.App. W.D.2004) (quoting *In re Marriage of Gardner,* 890 S.W.2d 303, 306 (Mo.App. S.D.1994)). We, therefore, address Mr. Thomas's second and final point.

*Division of Property*

■■■ Mr. Thomas, in his second point, contends that the trial court erred in dividing the marital property. The trial court valued the Union Bank accounts at $80,264.00 collectively and awarded Ms. Thomas and Mr. Thomas equal amounts of the remaining funds after payment of attorney fees, expert fees, and Ms. Thomas's credit card debt. The marital contributions of the employment benefits include profit-sharing plan at $196,625.46; thrift plan at $141,738.91; and cash-balance-retirement plan at $35,880. Ms. Thomas received the entire marital portions of both the profit-sharing and thrift plans. Ms. Thomas and Mr. Thomas equally shared the cash balance retirement plan. Both parties received their respective vehicles. Other marital property awarded to Ms. Thomas includes Farley State Bank checking accounts and Certificate of Deposit subject to indebtedness. This essentially resulted in Ms. Thomas receiving 87.6% and Mr. Thomas receiving 12.4% of the marital assets. The marital property need not be divided equally as long as it is fair

and equitable under the circumstances. *Bohon v. Bohon*, 102 S.W.3d 107, 109–10 (Mo.App. W.D.2003). "Generally, the division of marital property should be substantially equal unless one or more statutory or relevant non-statutory factors cause such a division to be unjust." *Id.* at 110 (citation and internal quotations omitted). The trial court took the following statutory factors into consideration: (1) economic circumstances of each spouse at the time of the division of the property is to become effective; (2) contribution of each spouse to the acquisition of marital property, including the contribution of the spouse as homemaker; (3) value of the non-marital property set aside to each spouse; (4) The conduct of the parties during the marriage; and (5) custodial arrangements for the minor children.

Mr. Thomas claims that the distribution was an abuse of the trial court's discretion because it treated his non-marital property as marital property when it divided the marital assets. Ms. Thomas contends that the trial court's division was not based solely on the value of non-marital property. She claims that a combination of the value of Mr. Thomas's separate assets, her economic circumstances, and her contribution as a homemaker justifies the trial court's decision. Ms. Thomas's reasoning does not persuade us. After the trial court listed the statutory factors, it only found that Mr. Thomas's assets were worth millions, before concluding that an equal division would be unjust. Both Mr. Thomas and Ms. Thomas contributed equally to the acquisition of the marital property. Ms. Thomas's role as a homemaker cannot be valued more than the laborer who earned the assets. In addition, Ms. Thomas's economic circumstance is probably not the reasoning behind the finding that an equal division would be unjust. This would make no sense because Ms. Thomas requested $1,000 a

month for five years to assist her with her household expenses. Accordingly, a substantially equal division would be just because her needs would be met in that half of the marital assets would total over $60,000, which is the sum of the requested maintenance. Furthermore, the trial court found Ms. Thomas was underemployed. Moreover, the physical custody of the children remains with Mr. Thomas; it follows that he has more expenses. We believe that the trial court made its decision based solely on the value of Mr. Thomas's separate property and, therefore, abused its discretion.

 A trial court can consider "the value of non-marital property that is set aside to each spouse" and "the fact that the separate property of one party is greater than that of the other" when dividing marital property. *Bohon*, 102 S.W.3d at 110 (citation and quotations omitted). The trial court's treatment of non-marital property, however, to such an extent that it has a material impact on the overall division of marital property is erroneous. *Woodson*, 92 S.W.3d at 785 (citing *De-Mayo v. DeMayo*, 9 S.W.3d 736, 741 (Mo. App. W.D.2000)). The disparate division here has been determined by this court to be an abuse of discretion absent a showing that a substantially equal division would be unjust. In *Bohon*, this court stated that "awarding Wife 17% to 23% of the marital assets while Husband received 79% to 83% of the marital assets [was substantially disparate]." 102 S.W.3d at 111. In *De-Mayo*, this court stated that a 13.45% to 86.55% division was evidence that the trial court treated the separate property as marital property and required reversal. 9 S.W.3d at 741.

### Conclusion

In conclusion, the trial court erred in both the characterization and division of

the marital property. The antenuptial agreement effectively identified the Union Bank accounts and the employment benefits as the sole and separate property of Mr. Thomas.[5] This mischaracterization resulted in an inequitable distribution. Therefore, we reverse and remand to the trial court for further proceedings consistent with this opinion.

HAROLD L. LOWENSTEIN, P.J., and JOSEPH M. ELLIS, J. concur.

---

**5.** The Farley State Bank accounts were also improperly characterized as marital property due to language in paragraph three of the

---

agreement. Those accounts are the separate property of Ms. Thomas.